# CHAMBERS *v.* MARONEY, CORRECTIONAL SUPERINTENDENT

No. 830. Argued April 27, 1970—Decided June 22, 1970 .

*Vincent J. Grogan,* by appointment of the Court, 396 U. S. 983, argued the cause and filed a brief for petitioner.

*Carol Mary Los* argued the cause for respondent, *pro hac vice.* With her on the brief was *Robert W. Duggan.*

*Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Amy Juviler* and *Brenda Soloff,* Assistant Attorneys General, filed a brief for the State of New York as *amicus curiae.*

MR. JUSTICE WHITE delivered the opinion of the Court.

The principal question in this case concerns the admissibility of evidence seized from an automobile, in which petitioner was riding at the time of his arrest, after the automobile was taken to a police station and was there thoroughly searched without a warrant. The Court of Appeals for the Third Circuit found no violation of petitioner's Fourth Amendment rights. We affirm.

44

I

During the night of May 20, 1963, a Gulf service station in North Braddock, Pennsylvania, was robbed by two men, each of whom carried and displayed a gun. The robbers took the currency from the cash register; the service station attendant, one Stephen Kovacich, was directed to place the coins in his right-hand glove, which was then taken by the robbers. Two teen-agers, who had earlier noticed a blue compact station wagon circling the block in the vicinity of the Gulf station, then saw the station wagon speed away from a parking lot close to the Gulf station. About the same time, they learned that the Gulf station had been robbed. They reported to police, who arrived immediately, that four men were in the station wagon and one was wearing a green sweater. Kovacich told the police that one of the men who robbed him was wearing a green sweater and the other was wearing a trench coat. A description of the car and the two robbers was broadcast over the police radio. Within an hour, a light blue compact station wagon answering the description and carrying four men was stopped by the police about two miles from the Gulf station. Petitioner was one of the men in the station wagon. He was wearing a green sweater and there was a trench coat in the car. The occupants were arrested and the car was driven to the police station. In the course of a thorough search of the car at the station, the police found concealed in a compartment under the dashboard two .38-caliber revolvers (one loaded with dumdum bullets), a right-hand glove containing small change, and certain cards bearing the name of Raymond Havicon, the attendant at a Boron service station in McKeesport, Pennsylvania, who had been robbed at gunpoint on May 13, 1963. In the course of a warrant-authorized search of petitioner's home the day after petitioner's arrest, police found and

seized certain .38-caliber ammunition, including some dumdum bullets similar to those found in one of the guns taken from the station wagon.

Petitioner was indicted for both robberies.[1] His first trial ended in a mistrial but he was convicted of both robberies at the second trial. Both Kovacich and Havicon identified petitioner as one of the robbers.[2] The materials taken from the station wagon were introduced into evidence, Kovacich identifying his glove and Havicon the cards taken in the May 13 robbery. The bullets seized at petitioner's house were also introduced over objections of petitioner's counsel.[3] Petitioner was sentenced to a term of four to eight years' imprisonment for the May 13 robbery and to a term of two to seven years' imprisonment for the May 20 robbery, the sentences to run consecutively.[4] Petitioner did not take a direct appeal from these convictions. In 1965, petitioner sought a writ of habeas corpus in the state court, which denied the writ after a brief evidentiary hearing; the denial of

---

[1] Petitioner was indicted separately for each robbery. One of the other three men was similarly indicted and the other two were indicted only for the Gulf robbery. All indictments and all defendants were tried together. In a second trial following a mistrial, the jury found all defendants guilty as charged.

[2] Kovacich identified petitioner at a pretrial stage of the proceedings, and so testified, but could not identify him at the trial. Havicon identified petitioner both before trial and at trial.

[3] The bullets were apparently excluded at the first trial. The grounds for the exclusion do not clearly appear from the record now before us.

[4] The four-to-eight-year sentence was to be served concurrently with another sentence, for an unrelated armed robbery offense, imposed earlier but vacated subsequent to imposition of sentence in this case. The two-to-seven-year term was to be consecutive to the other sentences. It appears that the offenses here at issue caused revocation of petitioner's parole in connection with a prior conviction. Apparently petitioner has now begun to serve the first of the two sentences imposed for the convictions here challenged.

the writ was affirmed on appeal in the Pennsylvania appellate courts. Habeas corpus proceedings were then commenced in the United States District Court for the Western District of Pennsylvania. An order to show cause was issued. Based on the State's response and the state court record, the petition for habeas corpus was denied without a hearing. The Court of Appeals for the Third Circuit affirmed, 408 F. 2d 1186, and we granted certiorari, 396 U. S. 900 (1969).[5]

## II

We pass quickly the claim that the search of the automobile was the fruit of an unlawful arrest. Both the courts below thought the arresting officers had probable cause to make the arrest. We agree. Having talked to the teen-age observers and to the victim Kovacich, the police had ample cause to stop a light blue compact station wagon carrying four men and to arrest the occupants, one of whom was wearing a green sweater

---

[5] Since *Mapp* v. *Ohio,* 367 U. S. 643 (1961), the federal courts have regularly entertained and ruled on petitions for habeas corpus filed by state prisoners alleging that unconstitutionally seized evidence was admitted at their trials. See, *e. g., Mancusi* v. *DeForte,* 392 U. S. 364 (1968); *Carafas* v. *LaVallee,* 391 U. S. 234 (1968); *Warden* v. *Hayden,* 387 U. S. 294 (1967). As for federal prisoners, a divided Court held that relief under 28 U. S. C. § 2255 was available to vindicate Fourth Amendment rights. *Kaufman* v. *United States,* 394 U. S. 217 (1969). Right-to-counsel claims of course have regularly been pressed and entertained in federal habeas corpus proceedings.

It is relevant to note here that petitioner Chambers at trial made no objection to the introduction of the items seized from the car; however his Fourth Amendment claims with respect to the auto search were raised and passed on by the Pennsylvania courts in the state habeas corpus proceeding. His objection to the search of his house was raised at his trial and rejected both on the merits and because he had not filed a motion to suppress; similar treatment was given the point in the state collateral proceedings, which took

and one of whom had a trench coat with him in the car.[6]

Even so, the search that produced the incriminating evidence was made at the police station some time after the arrest and cannot be justified as a search incident to an arrest: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston* v. *United States,* 376 U. S. 364, 367 (1964). *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216 (1968), is to the same effect; the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an. arrest no longer obtain when the accused is safely in custody at the station house.

There are, however, alternative grounds arguably justifying the search of the car in this case. In *Preston, supra,* the arrest was for vagrancy; it was apparent that the officers had no cause to believe that evidence of crime was concealed in the auto. In *Dyke, supra,* the Court expressly rejected the suggestion that there was probable cause to search the car, 391 U. S., at 221–222. Here the situation is different, for the police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat. As the state courts correctly held, there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was

place before the same judge who had tried the criminal case. The counsel claim was not presented at trial but was raised and rejected in the state collateral proceedings.

[6] In any event, as we point out below, the validity of an arrest is not necessarily determinative of the right to search a car if there is probable cause to make the search. Here, as will be true in many cases, the circumstances justifying the arrest are also those furnishing probable cause for the search.

there probable cause to search the car for guns and stolen money.

In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll* v. *United States,* 267 U. S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. The Court expressed its holding as follows:

> "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.
>
> "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. . . . [T]hose lawfully within the country, entitled to use

the public highways, have a right to free ·passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. . . .

. . . . .

"The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported." 267 U. S., at 153–154, 155–156.

The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U. S., at 158–159.

Finding that there was probable cause for the search and seizure at issue before it, the Court affirmed the convictions.

*Carroll* was followed and applied in *Husty* v. *United States,* 282 U. S. 694 (1931), and *Scher* v. *United States,* 305 U. S. 251 (1938). It was reaffirmed and followed in *Brinegar* v. *United States,* 338 U. S. 160 (1949). In 1964, the opinion in *Preston, supra,* cited both *Brinegar* and *Carroll* with approval, 376 U. S., at 366–367. In *Cooper* v. *California,* 386 U. S. 58 (1967),[7]

---

[7] *Cooper* involved the warrantless search of a car held for forfeiture under state law. Evidence seized from the car in that search was held admissible. In the case before us no claim is made that state law authorized that the station wagon be held as

the Court read *Preston* as dealing primarily with a search incident to arrest and cited that case for the proposition that the mobility of a car may make the search of a car without a warrant reasonable "although the result might be the opposite in a search of a home, a store, or other fixed piece of property." 386 U. S., at 59. The Court's opinion in *Dyke,* 391 U. S., at 221, recognized that "[a]utomobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office," citing *Brinegar* and *Carroll, supra.* However, because there was insufficient reason to search the car involved in the *Dyke* case, the Court did not reach the question of whether those cases "extend to a warrantless search, based upon probable cause, of an automobile which, having been stopped originally on a highway, is parked outside a courthouse." 391 U. S., at 222.[8]

Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that

evidence or as an instrumentality of the crime; nor was the station wagon an abandoned or stolen vehicle. The question here is whether probable cause justifies a warrantless search in the circumstances presented.

[8] Nothing said last term in *Chimel* v. *California,* 395 U. S. 752 (1969), purported to modify or affect the rationale of *Carroll.* As the Court noted:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' *Carroll* v. *United States,* 267 U. S. 132, 153; see *Brinegar* v. *United States,* 338 U. S. 160." 395 U. S., at 764 n. 9.

furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.[9]

In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety

---

[9] Following the car until a warrant can be obtained seems an impractical alternative since, among other things, the car may be taken out of the jurisdiction. Tracing the car and searching it hours or days later would of course permit instruments or fruits of crime to be removed from the car before the search.

of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.[10] The same consequences may not follow where there is unforeseeable cause to search a house. Compare *Vale* v. *Louisiana, ante,* p. 30. But as *Carroll, supra,* held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars.

### III

Neither of petitioner's remaining contentions warrants reversal of the judgment of the Court of Appeals. One of them challenges the admissibility at trial of the .38-caliber ammunition seized in the course of a search of petitioner's house. The circumstances relevant to this

---

[10] It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house.

issue are somewhat confused, involving as they do questions of probable cause, a lost search warrant, and the Pennsylvania procedure for challenging the admissibility of evidence seized. Both the District Court and the Court of Appeals, however, after careful examination of the record, found that if there was error in admitting the ammunition, the error was harmless beyond a reasonable doubt. Having ourselves studied this record, we are not prepared to differ with the two courts below. See *Harrington* v. *California,* 395 U. S. 250 (1969).

The final claim is that petitioner was not afforded the effective assistance of counsel. The facts pertinent to this claim are these: The Legal Aid Society of Allegheny County was appointed to represent petitioner prior to his first trial. A representative of the society conferred with petitioner, and a member of its staff, Mr. Middleman, appeared for petitioner at the first trial. There is no claim that petitioner was not then adequately represented by fully prepared counsel. The difficulty arises out of the second trial. Apparently no one from the Legal Aid Society again conferred with petitioner until a few minutes before the second trial began. The attorney who then appeared to represent petitioner was not Mr. Middleman but Mr. Tamburo, another Legal Aid Society attorney. No charge is made that Mr. Tamburo was incompetent or inexperienced; rather the claim is that his appearance for petitioner was so belated that he could not have furnished effective legal assistance at the second trial. Without granting an evidentiary hearing, the District Court rejected petitioner's claim. The Court of Appeals dealt with the matter in an extensive opinion. After carefully examining the state court record, which it had before it, the court found ample grounds for holding that the appearance of a different attorney at the second trial had not resulted in prejudice to petitioner. The claim that Mr. Tamburo

was unprepared centered around his allegedly inadequate efforts to have the guns and ammunition excluded from evidence. But the Court of Appeals found harmless any error in the admission of the bullets and ruled that the guns and other materials seized from the car were admissible evidence. Hence the claim of prejudice from the substitution of counsel was without substantial basis.[11] In this posture of the case we are not inclined to disturb the judgment of the Court of Appeals as to what the state record shows with respect to the adequacy of counsel. Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel. The Court of Appeals reached the right result in denying a hearing in this case.

*Affirmed.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, concurring.

I adhere to the view that the admission at trial of evidence acquired in alleged violation of Fourth Amend-

---

[11] It is pertinent to note that each of the four defendants was represented by separate counsel. The attorney for Lawson, who was the car owner and who was the only defendant to take the stand, appears to have been the lead counsel. As far as the record before us reveals, no counsel made any objection at the trial to the admission of the items taken from the car. Petitioner's counsel objected to the introduction of the bullets seized from petitioner's house.

ment standards is not of itself sufficient ground for a collateral attack upon an otherwise valid criminal conviction, state or federal. See *Harris* v. *Nelson,* 394 U. S. 286, 307 (dissenting opinion); *Kaufman* v. *United States,* 394 U. S. 217, 242 (dissenting opinion). But until the Court adopts that view, I regard myself as obligated to consider the merits of the Fourth and Fourteenth Amendment claims in a case of this kind. Upon that premise I join the opinion and judgment of the Court.

MR. JUSTICE HARLAN, concurring in part and dissenting in part.

I find myself in disagreement with the Court's disposition of this case in two respects.

I

I cannot join the Court's casual treatment of the issue that has been presented by both parties as the major issue in this case: petitioner's claim that he received ineffective assistance of counsel at his trial. As the Court acknowledges, petitioner met Mr. Tamburo, his trial counsel, for the first time en route to the courtroom on the morning of trial. Although a different Legal Aid Society attorney had represented petitioner at his first trial, apparently neither he nor anyone else from the society had conferred with petitioner in the interval between trials. Because the District Court did not hold an evidentiary hearing on the habeas petition, there is no indication in the record of the extent to which Mr. Tamburo may have consulted petitioner's previous attorney, the attorneys for the other defendants, or the files of the Legal Aid Society. What the record does disclose on this claim is essentially a combination of two factors: the entry of counsel into the case immediately

56

before trial, and his handling of the issues that arose during the trial.[1]

As respondent must concede, counsel's last-minute entry into the case precluded his compliance with the state rule requiring that motions to suppress evidence be made before trial, even assuming that he had sufficient acquaintance with the case to know what arguments were worth making. Furthermore, the record suggests that he may have had virtually no such acquaintance.

In the first place, he made no objection to the admission in evidence of the objects found during the search of the car at the station house after the arrest of its occupants, although that search was of questionable validity under Fourth Amendment standards, see *infra.*

Second, when the prosecution offered in evidence the bullets found in the search of petitioner's home, which had been excluded on defense objection at the first trial, Mr. Tamburo objected to their admission, but in a manner that suggested that he was a stranger to the facts of the case. While he indicated that he did know of the earlier exclusion, he apparently did not know on what ground the bullets had been excluded, and based his

---

[1] Respondent concedes in this Court that "no other facts are available to determine the amount and the quality of the preparation for trial pursued by Mr. Tamburo or the amount of evidentiary material known by and available to him in determining what, if any, evidentiary objections were mandated or what, if any, defenses were available to petitioner." Brief for Respondent 13. The Court of Appeals stated: "We do not know what preparation, if any, counsel was able to accomplish prior to the date of the trial as he did not testify in the state habeas corpus proceeding and there was no evidentiary hearing in the district court. From the lower court opinion, as will appear later, we are led to believe that counsel was not wholly familiar with all aspects of the case before trial." 408 F. 2d 1186, 1191.

objection only on their asserted irrelevance.[2] Later in the trial he renewed his objection on the basis of the inadequacy of the warrant, stating, "I didn't know a thing about the search Warrant until this morning." App. 130.[3]

Third, when prosecution witness Havicon made an in-court identification of petitioner as the man who had

---

[2] Mr. Tamburo stated to the trial court:

"Your Honor, at the first trial, the District Attorney attempted to introduce into evidence some .38 calibre bullets that were found at the Chambers' home after his arrest. . . . At that trial, it was objected to and the objection was sustained, and I would also like to object to it now, I don't think it is good for the Jury to hear it. I don't feel there is any relevancy or connection between the fact there were .38 calibre bullets at his home and the fact that a .38 calibre gun was found, not on the person of Chambers, but in the group." App. 82.

This was the only instance in which Mr. Tamburo expressed any knowledge of what had transpired at the first trial, and it does not appear whether he learned of the exclusion from his brief talk with petitioner en route to the courtroom or from sources within the Legal Aid Society. The record does not disclose the reason for the exclusion of the bullets at the first trial.

[3] This colloquy followed the renewed objection:

"THE COURT: Well, of course, you have known about this from the other trial three weeks ago.

"MR. TAMBURO: I wasn't the attorney at the other trial.

"THE COURT: But, you knew about it?

"MR. TAMBURO: I didn't know a thing about the search Warrant until this morning.

"THE COURT: You knew about the evidence about to be introduced, you told me about it.

"MR. TAMBURO: It wasn't admitted.

"THE COURT: That doesn't mean I have to exclude it now."
Id., at 130.

The court proceeded to overrule the objection on the ground that it had not been made in a pretrial motion, adding that "I think there is reasonable ground for making a search here, even without a Warrant." Id., at 130–131.

threatened him with a gun during one of the robberies, Mr. Tamburo asked questions in cross-examination that suggested that he had not had time to settle upon a trial strategy or even to consider whether petitioner would take the stand. Mr. Tamburo asked whether, at a pretrial lineup, a detective had not told Havicon that petitioner "was the man with the gun." After Havicon's negative answer, this colloquy ensued:

"THE COURT: I take it you will be able to disprove that, will you?

"MR. TAMBURO: What?

"THE COURT: You shouldn't ask that question unless you are prepared to disprove that, contradict him.

"MR. TAMBURO: I have the defendant's testimony.

"THE COURT: Disprove it in any way at all.

"MR. MEANS [the prosecutor]: I don't understand how the defendant would know what the detectives told him.

"THE COURT: He said he is going to disprove it by the defendant, that's all right, go ahead." App. 34.

The next witness was a police officer who had been present at the lineup, and who testified that no one had told Havicon whom to pick out. Petitioner's counsel did not cross-examine, and petitioner never took the stand.

On this state of the record the Court of Appeals ruled that, although the late appointment of counsel necessitated close scrutiny into the effectiveness of his representation, petitioner "was not prejudiced by the late appointment of counsel" because neither of the Fourth Amendment claims belatedly raised justified reversal of

the conviction. 408 F. 2d 1186, 1196. I agree that the strength of the search and seizure claims is an element to be considered in the assessment of whether counsel was adequately prepared to make an effective defense, but I cannot agree that the relevance of those claims in this regard disappears upon a conclusion by an appellate court that they do not invalidate the conviction.

This Court recognized long ago that the duty to provide counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell* v. *Alabama,* 287 U. S. 45, 71 (1932); *Hawk* v. *Olson,* 326 U. S. 271, 278 (1945). While "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial," the Court has recognized that

> "the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." *Avery* v. *Alabama,* 308 U. S. 444, 446 (1940).

Where counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel.

It seems to me that what this record reveals about counsel's handling of the search and seizure claims and about the tenor of his cross-examination of the government witness Havicon, when coupled with his late entry into the case, called for more exploration by the District Court before petitioner's ineffective assistance of counsel claim could be dismissed. Such an exploration should

have been directed to ascertaining whether the circumstances under which Mr. Tamburo was required to undertake petitioner's defense at the second trial were such as to send him into the courtroom with so little knowledge of the case as to render him incapable of affording his client adequate representation. The event of that exploration would turn, not on a mere assessment of particular missteps or omissions of counsel, whether or not caused by negligence, cf. *McMann* v. *Richardson,* 397 U. S. 759 (1970), but on the District Court's evaluation of the total picture, with the objective of determining whether petitioner was deprived of rudimentary legal assistance. See *Williams* v. *Beto,* 354 F. 2d 698 (C. A. 5th Cir. 1965). And, of course, such an exploration would not be confined to the three episodes that, in my opinion, triggered the necessity for a hearing.

It is not an answer to petitioner's claim for a reviewing court simply to conclude that he has failed after the fact to show that, with adequate assistance, he would have prevailed at trial. *Glasser* v. *United States,* 315 U. S. 60, 75–76 (1942); cf. *White* v. *Maryland,* 373 U. S. 59 (1963); *Reynolds* v. *Cochran,* 365 U. S. 525, 530–533 (1961). Further inquiry might show, of course, that counsel's opportunity for preparation was adequate to protect petitioner's interests,[4] but petitioner did, in my view, raise a sufficient doubt on that score to be entitled to an evidentiary hearing.[5]

---

[4] In *Avery,* this Court concluded on the basis of a hearing: "That the examination and preparation of the case, in the time permitted by the trial judge, had been adequate for counsel to exhaust its every angle is illuminated by the absence of any indication, on the motion and hearing for new trial, that they could have done more had additional time been granted." 308 U. S., at 452.

[5] The absence of any request by counsel for a continuance of the trial should not, in my opinion, serve to vitiate petitioner's claim at this juncture.

## II

In sustaining the search of the automobile I believe the Court ignores the framework of our past decisions circumscribing the scope of permissible search without a warrant. The Court has long read the Fourth Amendment's proscription of "unreasonable" searches as imposing a general principle that a search without a warrant is not justified by the mere knowledge by the searching officers of facts showing probable cause. The "general requirement that a search warrant be obtained" is basic to the Amendment's protection of privacy, and " 'the burden is on those seeking [an] exemption . . . to show the need for it.' " *E. g., Chimel* v. *California,* 395 U. S. 752, 762 (1969); *Katz* v. *United States,* 389 U. S. 347, 356–358 (1967); *Warden* v. *Hayden,* 387 U. S. 294, 299 (1967); *Preston* v. *United States,* 376 U. S. 364, 367 (1964); *United States* v. *Jeffers,* 342 U. S. 48, 51 (1951); *McDonald* v. *United States,* 335 U. S. 451, 455–456 (1948); *Agnello* v. *United States,* 269 U. S. 20, 33 (1925).

Fidelity to this established principle requires that, where exceptions are made to accommodate the exigencies of particular situations, those exceptions be no broader than necessitated by the circumstances presented. For example, the Court has recognized that an arrest creates an emergency situation justifying a warrantless search of the arrestee's person and of "the area from within which he might gain possession of a weapon or destructible evidence"; however, because the exigency giving rise to this exception extends only that far, the search may go no further. *Chimel* v. *California,* 395 U. S., at 763; *Trupiano* v. *United States,* 334 U. S. 699, 705, 708 (1948). Similarly we held in *Terry* v. *Ohio,* 392 U. S. 1 (1968), that a warrantless search in a "stop and frisk" situation must "be strictly circum-

scribed by the exigencies which justify its initiation." *Id.,* at 26. Any intrusion beyond what is necessary for the personal safety of the officer or others nearby is forbidden.

Where officers have probable cause to search a vehicle on a public way, a further limited exception to the warrant requirement is reasonable because "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll* v. *United States,* 267 U. S. 132, 153 (1925). Because the officers might be deprived of valuable evidence if required to obtain a warrant before effecting any search or seizure, I agree with the Court that they should be permitted to take the steps necessary to preserve evidence and to make a search possible.[6] Cf. ALI, Model Code of Pre-Arraignment Procedure § 6.03 (Tent. Draft No. 3, 1970). The Court holds that those steps include making a warrantless search of the entire vehicle on the highway—a conclusion reached by the Court in *Carroll* without discussion—and indeed appears to go further and to condone the removal of the car to the police station for a warrantless search there at the convenience of the police.[7] I cannot agree that this result is con-

---

[6] Where a suspect is lawfully arrested in the automobile, the officers may, of course, perform a search within the limits prescribed by *Chimel* as an incident to the lawful arrest. However, as the Court recognizes, the search here exceeded those limits. Nor was the search here within the limits imposed by pre-*Chimel* law for searches incident to arrest; therefore, the retroactivity of *Chimel* is not drawn into question in this case. See *Preston* v. *United States,* 376 U. S. 364 (1964).

[7] The Court disregards the fact that *Carroll,* and each of this Court's decisions upholding a warrantless vehicle search on its authority, involved a search for contraband. *Brinegar* v. *United States,* 338 U. S. 160 (1949); *Scher* v. *United States,* 305 U. S. 251 (1938); *Husty* v. *United States,* 282 U. S. 694 (1931); see *United States* v. *Di Re,* 332 U. S. 581, 584–586 (1948). Although subsequent dicta have omitted this limitation, see *Dyke* v. *Taylor Imple-*

sistent with our insistence in other areas that departures from the warrant requirement strictly conform to the exigency presented.

The Court concedes that the police could prevent removal of the evidence by temporarily seizing the car for the time necessary to obtain a warrant. It does not dispute that such a course would fully protect the interests of effective law enforcement; rather it states that whether temporary seizure is a "lesser" intrusion than warrantless search "is itself a debatable question and the answer may depend on a variety of circumstances." *Ante,* at 51–52.[8] I believe it clear that a warrantless search involves the greater sacrifice of Fourth Amendment values.

The Fourth Amendment proscribes, to be sure, unreasonable "seizures" as well as "searches." However, in the circumstances in which this problem is likely to occur, the lesser intrusion will almost always be the simple seizure of the car for the period—perhaps a day—necessary to enable the officers to obtain a search warrant. In the first place, as this case shows, the very facts establishing probable cause to search will often

*ment Mfg. Co.,* 391 U. S. 216, 221 (1968); *United States* v. *Ventresca,* 380 U. S. 102, 107 n. 2 (1965); *United States* v. *Rabinowitz,* 339 U. S. 56, 61 (1950), *id.,* at 73 (Frankfurter, J., dissenting), the *Carroll* decision has not until today been held to authorize a general search of a vehicle for evidence of crime, without a warrant, in every case where probable cause exists.

[8] The Court, unable to decide whether search or temporary seizure is the "lesser" intrusion, in this case authorizes both. The Court concludes that it was reasonable for the police to take the car to the station, where they searched it once to no avail. The searching officers then entered the station, interrogated petitioner and the car's owner, and returned later for another search of the car—this one successful. At all times the car and its contents were secure against removal or destruction. Nevertheless, the Court approves the searches without even an inquiry into the officers' ability promptly to take their case before a magistrate.

also justify arrest of the occupants of the vehicle. Since the occupants themselves are to be taken into custody, they will suffer minimal further inconvenience from the temporary immobilization of their vehicle. Even where no arrests are made, persons who wish to avoid a search—either to protect their privacy or to conceal incriminating evidence—will almost certainly prefer a brief loss of the use of the vehicle in exchange for the opportunity to have a magistrate pass upon the justification for the search. To be sure, one can conceive of instances in which the occupant, having nothing to hide and lacking concern for the privacy of the automobile, would be more deeply offended by a temporary immobilization of his vehicle than by a prompt search of it. However, such a person always remains free to consent to an immediate search, thus avoiding any delay. Where consent is not forthcoming, the occupants of the car have an interest in privacy that is protected by the Fourth Amendment even where the circumstances justify a temporary seizure. *Terry* v. *Ohio, supra.* The Court's endorsement of a warrantless invasion of that privacy where another course would suffice is simply inconsistent with our repeated stress on the Fourth Amendment's mandate of " 'adherence to judicial processes.' " *E. g., Katz* v. *United States,* 389 U. S., at 357.[9]

Indeed, I believe this conclusion is implicit in the opinion of the unanimous Court in *Preston* v. *United*

---

[9] Circumstances might arise in which it would be impracticable to immobilize the car for the time required to obtain a warrant—for example, where a single police officer must take arrested suspects to the station, and has no way of protecting the suspects' car during his absence. In such situations it might be wholly reasonable to perform an on-the-spot search based on probable cause. However, where nothing in the situation makes impracticable the obtaining of a warrant, I cannot join the Court in shunting aside that vital Fourth Amendment safeguard.

*States*, 376 U. S. 364 (1964). The Court there purported to decide whether a factual situation virtually identical to the one now before us was "such as to fall within *any* of the exceptions to the constitutional rule that a search warrant must be had before a search may be made." *Id.,* at 367 (emphasis added). The Court concluded that no exception was available, stating that "since the men were under arrest at the police station and the car was in police custody at a garage, [there was no] danger that the car would be moved out of the locality or jurisdiction." *Id.,* at 368. The Court's reliance on the police custody of the car as its reason for holding "that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment," *ibid.,* can only have been based on the premise that the more reasonable course was for the police to retain custody of the car for the short time necessary to obtain a warrant. The Court expressly did not rely, as suggested today, on the fact that an arrest for vagrancy provided "no cause to believe that evidence of crime was concealed in the auto." *Ante,* at 47; see 376 U. S., at 368; *Wood* v. *Crouse,* 417 F. 2d 394, 397–398 (C. A. 10th Cir. 1969). The Court now discards the approach taken in *Preston,* and creates a special rule for automobile searches that is seriously at odds with generally applied Fourth Amendment principles.

### III

The Court accepts the conclusion of the two courts below that the introduction of the bullets found in petitioner's home, if error, was harmless. Although, as explained above, I do not agree that this destroys the relevance of the issue to the ineffectiveness of counsel claim, I agree that the record supports the lower courts' conclusion that this item of evidence, taken alone, was harmless beyond a reasonable doubt.