Gary Kent **HOWELL**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–217.

Court of Criminal Appeals of Oklahoma.

June 28, 1974.

Rehearing Denied July 15, 1974.

Don Hamilton and Jon L. Hester, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Gary Kent Howell, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–73–133, for the crime of Grand Larceny, After Former Conviction of a Felony. In accordance with the jury verdict he was sentenced to serve ten (10) years imprisonment, and from said judgment and sen-

tence a timely appeal has been perfected to this Court.

Briefly stated, the facts reveal that at the trial, Bill M. Lewis, general manager of the M & P Grocery Store located at 712 E. Highland in Shawnee, Oklahoma, testified that on April 4, 1973, between 2:00 p.m. and 3:00 p.m. he was watching a closed circuit TV monitor, focused on the check-out area, when he noticed two men standing suspiciously close together at the check-out stand nearest the camera. As he watched, he saw a person standing directly behind the two taking $10.00 and $20.00 bills out of the cash register on the middle lane behind them. Mr. Lewis testified that he saw the person from the waist up and that the defendant, whom he identified at trial, was the same person. After seeing what was happening, the witness said he got the gun he kept in his office and went into the store. Finding the three men standing in the same positions as they were in when he had first seen them on the monitor, he drew the gun on them and told them to stay where they were until the police came. He testified that one of the men moved toward him and that another, whom he identified as the defendant, moved toward the third man and attempted to hand him some money which he had taken from his pocket. The third man refused to take the money and it dropped to the floor. Mr. Lewis further testified that he held his gun on the men until the police arrived, after which the money was picked up from the floor and found to total $960.00. The witness said that he was not sure whether the cash register was locked or not, but that the drawer could be opened by opening the side door of the register and pushing a button, thus avoiding any noise or triggering any alarm.

The next witness, Mrs. Dian Hopkins, testified that on the afternoon of the robbery, two men whom she identified in the courtroom, had come to her register to pay for their purchases. She said that at this time she did not see the defendant, and that she had already checked out the first of the two men when Mr. Lewis entered the store and started talking to the men. It was at this point that she first saw "the boy with the glasses" whom she identified at trial as the defendant. She testified that he had his right hand in his right pocket, that he took out some money and attempted to hand it to "the boy in the dark jacket." She stated that this second person moved away from the defendant and the money fell to the floor.

Mr. Robert Newton, a milk salesman making a delivery at the store scheduled for some time between 2:00 and 3:00 p.m., testified that he saw the three men who were later arrested, drive into the store parking lot and park a 1964 or 1965 black Chevrolet.

Detective Lloyd Gribble, the Shawnee police officer first arriving at the scene, testified that he went into the store where he saw Mr. Lewis holding a gun on two men, and a quantity of money laying on the floor near the men. He said his partner went to the back of the store and arrested a third man while he arrested the defendant who was standing near the first cash register and a man in a dark shirt. After the men were placed under arrest, one of the police officers retrieved the money from the floor, counted it, and found it to total $960.00.

Officer Gribble stated that after the men were jailed, he returned to the grocery store and located the car which the men had driven and had it impounded and taken to a local garage. The next morning he obtained a search warrant and examined the car finding a small bag containing an assortment of keys, including cash register keys which was introduced at trial as Exhibit # 5.

On recall testimony, Mr. Lewis testified that most of the keys in Exhibit # 5 were for either National or Sweda cash registers, but that he had never seen these particular keys until they were shown to him after they were recovered in the search of the car.

Testifying for the defense, Michael Bonham, one of the parties also charged in the crime, stated that he, the defendant, and a third party charged in the crime, had gone to Shawnee to look for a co-worker. He stated that they stopped at the M & P Grocery where he and the defendant were paying for some purchases, followed in the check-out line by the third co-defendant. It was his testimony that he had not seen anyone take any money from the middle cash register when Mr. Lewis entered the store "shaking a gun in my face." Bonham testified that within minutes the police arrived and arrested them. Following his arrest, before a search warrant had been served on him, he alleged he overheard Officer Gribble and another police officer saying that some keys had been found in the car.

◼ In his first proposition of error, defendant urges that the court erred in admitting evidence from an allegedly illegal search. We find it unnecessary to consider the merit of this contention because in view of the overwhelming evidence on which the verdict was based, even if the admission of the evidence was error, it was harmless error as held in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970). It must be remembered that in addition to the cash register keys in the complained of Exhibit # 5, which were admittedly not used in the instant crime and the mere possession of which is not indicative of a crime, evidence introduced at trial also included the testimony of two eye-witnesses, including the store manager, who apprehended the defendant in the act.

◼ Defendant's second proposition alleges that the arguments of the State were improper and so inflamed the minds of the jurors that a fair and impartial trial was impossible. The only objection entered to the State's argument coming at the end of arguments, after the jury had retired was:

"Comes now the defendant and objects to the argument of counsel for the State of Oklahoma, to both his opening and closing arguments for the reasons and on the grounds that it was prejudicial and inflammatory and was outside the evidence as presented in this case."

Nowhere, either in the trial transcript or in his brief, did defendant set forth particular passages or statements which he considered inflammatory. In Grimes v. State, Okl.Cr., 365 P.2d 739 (1961), this Court held that objections to improper argument must be made during the trial, and the defendant must go further and move the objectionable argument be stricken from the jury's consideration. The objection in the instant case clearly does not fall within these guidelines since it was made out of the hearing of the jury after they had already begun deliberations and failed to specify alleged improper argument.

Further, even if defendant had designated, with particularity, the objectionable argument, the remarks must be found to be manifestly prejudicial to defendant before this Court would be justified in modifying or reversing the conviction. See Battle v. State, Okl.Cr., 478 P.2d 1005. In Carr v. State, Okl.Cr., 514 P.2d 413 (1973), this Court also pointed out that it has long been held that the prosecutor in closing argument has the right to discuss evidence from his standpoint and to draw reasonable inferences and deductions therefrom. We do not feel that the State's arguments were either improper or properly objected to, and accordingly, we find this proposition to be without merit.

In a reply brief, in addition to the errors proposed above, defendant asserts that his rights were abused in the denial of a continuance to enable him to obtain transcripts from the preliminary hearing of a companion case to use in support of his Motion to Suppress and that the testimony in the subsequent trial of one of the co-charged parties, should also be considered on appeal in support of the Motion. In view of our findings above that the merit of the first proposition dealing with the admission of the keys, does not have to be discussed, we find that the last two propositions have al-

**46**

ready been dealt with and it is unnecessary to consider them here.

A careful reading of the record reveals no prejudicial error which would require modification or reversal, and the judgment and sentence appealed from is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.