326 So.2d 657

**Wilbert WATTERS**

v.

**STATE.**

**6 Div. 995.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

Gary W. Weston, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Stephen M. Langham, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was tried and convicted of the offense of robbery, and the jury fixed his punishment at twenty years in the penitentiary. He was represented at arraignment and trial by Court-appointed counsel. He pleaded not guilty. After sentence he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.

Omitting the formal parts the indictment reads as follows:

"The grand jury of said county charge that, before the finding of this indictment, WILBERT WATTERS, whose name is to the Grand Jury otherwise unknown, feloniously took TWENTY SIX DOLLARS of the lawful currency of the United States of America, a more particular description and denomination of which is otherwise unknown to the Grand Jury, twenty seven bottles of wine of the aggregate value of THIRTY FIVE DOLLARS, one .22 caliber pistol of the

value of THIRTY DOLLARS and one clock radio of the value of FORTY SEVEN DOLLARS, the personal property of Alberta Womack, from her person and against her will, by violence to her person or by putting her in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

The testimony was in sharp conflict. The evidence for the State tended to show an aggravated case of robbery between the hours of 11:30 p. m. and midnight on December 6, 1974. The testimony of appellant was that though he was present in the house with two companions on the night in question, no robbery was committed.

The evidence is undisputed that appellant, one Ronnie Davis, and another individual whose name was never revealed, went to the home of William R. Womack, 1529 Pine Avenue, Southwest, Ishkooda, a community in Jefferson County, Alabama, on the night of December 6, 1974. What happened after they entered the home is conflicting.

At the Womack home were the husband, wife, three daughters and a four-year old grandson. According to the State's evidence, appellant and his two companions were armed with a sawed-off shotgun, a regular .12 gauge shotgun and a pistol. They terrorized all members of the family using harsh, ugly and threatening language, and at all times had the shotguns and the pistol trained on them. Appellant went to Alberta Womack's bedroom and made her get out of bed. He demanded, "every ——————— ——————— thing you all got." Alberta gave him all the money she had which was $26.00. This small amount of money incensed appellant, and he insisted there must be more money around the house. Appellant continued to threaten Alberta and her entire family with death unless they produced more money. Appellant dragged William Womack out of his bed simultaneously striking him with a weapon and demanding more money.

Appellant was so infuriated as to the small amount of money taken that he threatened to kill the entire family and had to be restrained from doing so by one of the other robbers. His behavior became so strident that Alberta tried to placate him by telling him she had some wine in the refrigerator. Appellant, still armed, took her to the kitchen and made her get 27 bottles of wine from the refrigerator and place them in a trash receptacle. Appellant demanded that Alberta get a sheet off the bed and tear it into pieces and he used these pieces to bind the hands and feet of her husband. Appellant and his companions then went on a rampage, ransacking the house, looking for other things of value. One of the Womack daughters apologized for the family's lack of more money at which point appellant said, "I ought to kill you, ——————," and slapped her in the face.

Unknown to the robbers, Sharon, another daughter of the Womacks, had gone to the bathroom, jumped out the window and went to a neighbor's house to call the Police Department to report that the robbery was still in progress. Officer J. M. Robertson, a member of the Birmingham Police Department, responded to the call. He was followed by a backup unit. On arriving at the scene of the robbery, the officer saw a 1966 Buick automobile with appellant in the driver's seat parked in front of 1529 Pine Avenue with the motor running. The officer also saw one of the other robbers walking from the house toward the Buick carrying a shotgun. The officer commanded him to halt, but he did not stop but went to the passenger's side of the waiting Buick. The backup unit arrived and the officers went to the Buick and arrested appellant and Ronnie Davis and put them in separate patrol cars and gave them the *Miranda* rights and warnings. The officers searched the Buick automobile recovering a shotgun and a pistol under the feet of appellant. A further search of the automobile culminated in the recovery of

the radio, a jewelry box and several bottles of wine.

After robbing the Womack household, they were told to remain still for at least five minutes and not to call the police. Appellant told them if they did not heed his warning, they would come back later and burn the house down.

After the robbers were arrested, the officer went to the Womack house and got them to come out to the car to view the articles of property discovered by the officers. They immediately identified the property as belonging to them. The officers took the property, locked it in the trunk of the patrol car and carried the items to the Ensley Precinct Station where they were locked up in the evidence locker and where they remained until they were brought to appellant's trial and introduced in evidence over appellant's objections that these items of property were illegally seized without a search warrant.

On cross-examination the Womacks were asked if the house where they lived was known as a "shot house." They admitted that at one time they had sold alcoholic beverages there but not in the last four or five years.

In an attempt to impeach the testimony of the Womacks, appellant offered the testimony of two of his sisters that they had bought alcoholic beverages at this place during the year 1974.

Appellant testified that on the night of the alleged robbery he and his companions went to the Womack house where he gave Mr. Womack $5.00 for a bottle of gin. That at this point one of the trio made a statement about one of the Womack girls who was dressed in a nightgown. The remark made Mr. Womack mad, and he pulled a pistol and ordered them out of the house. When they got to the car, the third man whose name was never called, told appellant and Davis that since they did not get the bottle of gin, they should get their money back. According to appellant this unnamed man reached in the back seat of the car and got a shotgun and they returned to the Womack house to get the money which was paid for the undelivered gin. That when they got back in the house and asked about the $5.00, that Mrs. Womack gave them the 27 bottles of wine in lieu of the $5.00 and he carried the wine to his car and about that time the police arrived. Appellant denied that they robbed the Womacks and further stated he did not know the unnamed man had a shotgun in his car.

On cross-examinaton he testified that he did not know the radio and jewelry box were in his car and that the first time he saw them was at the Ensley Precinct in possession of the police officers. He did admit that he had previously been convicted of burglary and grand larceny.

■ The officers had a right to search the automobile belonging to appellant under *Daniels v. State*, 290 Ala. 316, 276 So.2d 441, and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

■ There was no variance in the allegations of the ownership of the property laid in the indictment and the proof offered at trial. *Riggens v. State*, 44 Ala.App. 275, 207 So.2d 141.

■ Conflicts in evidence as between defense and prosecution are for the jury to resolve. *Miller v. State*, 39 Ala.App. 584, 105 So.2d 711; *Haney v. State*, 42 Ala.App. 94, 153 So.2d 652.

■ Appellant was caught "red handed" at the place of the robbery and the fruits of the robbery were in his car. He received a fair and impartial trial. He was due this and nothing more.

There is no error in the record and the judgment of conviction is affirmed.

Affirmed.

All the Judges concur, except CATES, P. J., not sitting.