**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dewey BUTLER and Thomas Mims,**
**Defendants-Appellants.**

**No. 75–4359**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 18, 1976.

Abel Toscano, Jr., Harlingen, Tex., for defendants-appellants.

Edward B. McDonough, Jr., U. S. Atty., Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Appellants were convicted in a non-jury trial of conspiracy to possess with intent to distribute heroin. 21 U.S.C. §§ 841(a)(1), 846. In this appeal they argue that the court below erred in denying their motion to suppress certain evidence as the fruit of illegal searches. We find that the searches, though warrantless, were lawful, and thus we affirm the convictions.

The facts as found by the district court are as follows:

On April 28, 1975, the District Office of the Drug Enforcement Administration in Tampa, Florida, notified the District Office of the Drug Enforcement Administration in Brownsville, Texas, that a black man named Dewey Butler was enroute to Brownsville from Tampa and was carrying in excess of $20,000 cash in a small brown paper sack. The Airport Security personnel discovered the money in a blue zipper suitcase that Butler was carrying. They gave an unmistakable description of Butler and told the Drug Agents that they recognized Butler as a frequent visitor of Brownsville, Texas.

The Brownsville Drug Agents contacted Drug Agents in Dallas to confirm that Butler was still enroute to Brownsville. While they were able to confirm Butler's travel agenda and arrival time, they could not locate the small brown sack of money.

The Brownsville Drug Agents followed Butler from the moment he arrived at the Brownsville Airport. Butler registered in the Fort Brown Motel under the assumed name of D. Watkins, Tampa, Florida, and took Room 612. The Drug Agents continued their surveillance from Room 614 which adjoins Room 612. Motel personnel advised the Drug Agents that they recognized Butler as having previously been a guest in the past few months but stated he had used different names on those prior visits. They also searched the motel records under the names Butler and Watkins but with negative results.

Later during the night of the twenty-eighth, Butler's room was visited by a person wearing blue bell-bottomed pants and white tennis shoes, who is now known to be the Defendant Mims. Agent VanDever testified that he was able to make this observation by taking a prone position on the floor and peering through a small gap between the door and the floor. Shortly thereafter the midnight visitor departed carrying *a small brown paper sack,* hailed a taxi and drove to the local Holiday Inn where he registered as T. Mims of *Detroit, Michigan.* The fact Mims was carrying a small brown paper sack similar to the one that held the $20,000 cash was one of the motivating factors in establishing surveillance of his movements.

Shortly before 3:30 a. m. during the early morning hours of April 29, 1975, the Desk Clerk of the Fort Brown Motel notified the Drug Agents that a man named Tomy [sic] Mims from *Los Angeles, California,* had just registered in Room 116. The Clerk mentioned that he was suspicious since Mims told him that he also had a room in the Holiday Inn in Brownsville, and the Desk Clerk felt Mims might be trying to avoid paying his bill. The officers further noted the variance in Mims' alleged residence.

During the late morning hours of April 29, 1975, the Defendant Mims left the Fort Brown in a taxi, then departed his conveyance in the vicinity of the De Los Santos Taxi Stand, which is a known contact point for heroin dealers, and proceeded on foot. Drug Agent Gary Oswald testified that the De Los Santos Taxi Stand is documented in the files of the Drug Enforcement Administration as having been involved in a number of other cases and narcotic transactions have been negotiated there.

At this point the Drug Agents temporarily lost contact with Mims but eventually re-established surveillance only to discover that Mims was accompanied by a female companion. The pair returned to the Holiday Inn where they unloaded some luggage and then re-entered the taxi and embarked for Matamoros, Mexico.

The taxi was lost in traffic shortly after it crossed into Mexico but was later located in Matamoros parked across the street from the place of business of a known narcotics dealer. Since the Drug Agents are known they left the area and lost contact with the taxi. At the Preliminary Hearing Agent Morrison refused to reveal the exact location of the place or how he knew it belonged to a narcotic dealer because it was at that time being investigated.

Upon arriving in Brownsville the Defendant Butler had made several calls to Detroit, Michigan, and the Agents learned that the subscriber of one of the numbers was a man named Barnes whose car had been used to transport four ounces of heroin in 1973.

A few hours after losing Mims in Mexico he was observed walking across the parking lot of the Fort Brown carrying a large brown shopping bag and heading into the wing of the motel in which Butler's room was located. Mims was again dressed in his favorite attire which consisted of blue, bell-bottomed trousers and white tennis shoes.

After a brief interval a person wearing blue, bell-bottomed jeans and white tennis shoes knocked on the door of Room 612. After this person entered the room the Drug Agents in the adjoining room heard pounding and whirring noises. The Drug Agents, who all had several years experience, testified that they were familiar with the technique of cutting or diluting heroin and cocaine by using an electric blender. They further testified that the variable speed whirring noises sounded as if it was made by an electric blender.

After the intermittent whirring and pounding noises ceased, the visitor with white tennis shoes departed. Within a few minutes the Defendant Mims, who was dressed in his usual attire, was seen walking across the parking lot of the Fort Brown carrying a large brown paper bag. He boarded a taxi and was proceeding in the direction of the Holiday Inn when he was stopped by the Drug Agents, arrested, and the shopping bag seized. The shopping bag he was carrying contained approximately four and one-half pounds of heroin. Agent Oswald transmitted this information

to Agent Morrison who called the Desk Clerk at the Fort Brown Motel. Agent Morrison was informed that the occupant of Room 612 stated he did not want maid service because he would be leaving shortly.

The Drug Agents had been checking the departure times for conveyances from Brownsville and after this flurry of activity they testified they feared both parties were ready to leave so they immediately proceeded to Butler's room to arrest him. They knocked on the door and Butler answered but when they announced their official status he slammed the door in their faces and they were forced to break in to arrest him. Once inside the agents seized suspected contraband contained in condoms, a brown powder which was drying under heat lamps, and an electric blender, all of which was in plain view in the room in which Butler was arrested.

At some time later the agents also went to the Holiday Inn and searched the room that the Defendant Mims was sharing with his female companion. One of the agents testified that the female consented to their search there and this testimony was not seriously questioned at the hearing on Motions.

▪ Appellants now challenge as unlawful only the arrest of Mims in the taxi, the accompanying seizure of the shopping bag, and the entry and search of Butler's hotel room. These arrests and searches were well within recognized exceptions to the warrant requirement. In both situations, probable cause coincided with exigent circumstances, necessitating quick action by the agents. The operation of the blender in Room 612, taken with the other information known to the agents, provided ample probable cause to arrest Mims. Mims' departure with the shopping bag in the taxi provided exigent circumstances. *Cf. Chambers v. Maroney,* 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The shopping bag was within Mims' reach in the taxi, so its seizure also could be justified as incident to a lawful arrest. *Cf. Chimel v. California,* 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Once Mims was arrested, the heroin seized, and the agents learned that Butler planned a quick departure, the warrantless arrest of

Butler in Room 612 was fully justified, as was the seizure of the various items in plain view in the room. *See McGeehan v. Wainwright,* 5 Cir. 1976, 526 F.2d 397, 400.

Because the foregoing considerations enable us easily to conclude that the district court did not err in denying the motions to suppress, we do not reach the question of whether the district court's alternative reliance on an "extended border search" theory was well-founded. The convictions appealed from are

AFFIRMED.