STATE OF NORTH CAROLINA v. TYRONE FREDERICK, SOCRATES ARMWOOD, CORNELIUS LEE

No. 764SC427

(Filed 17 November 1976)

1. Searches and Seizures § 1— warrantless search of automobile — probable cause

Although a warrant to search defendants' automobile was defective, the officer had probable cause to conduct the search, and the search was therefore lawful, where the officer acted pursuant to information received by a second officer from a reliable informant giving a detailed description of defendants and their automobile, and advising the officer of the stolen nature of guns and other merchandise in the car, the direction defendants were traveling, and the time of their arrival in the town where the search occurred.

2. Search and Seizures § 1— probable cause to search automobile — search after removal to police station

Where there was probable cause to search an automobile at the place where it was stopped, the search was not rendered invalid because it occurred after the automobile had been taken to the police station.

APPEAL by State from order of *Lanier, Judge.* Order entered 3 February 1976 in Superior Court, SAMPSON County. Heard in the Court of Appeals 23 September 1976.

By nine separate indictments, defendants were each charged with three counts of breaking and entering, two counts of larceny and two counts of receiving stolen goods. In each case, defendants moved to suppress any evidence or statements taken from them, and on 2 February 1976, a voir dire was held on the motions. State's evidence tended to show that on 20 October 1975, Mount Olive policeman Glen Howard, while on duty as a dispatcher, received a call from an unnamed male asking for Officer Robert Holmes. The anonymous caller left his telephone number and requested that Officer Holmes contact him. Howard contacted Holmes and relayed the caller's number and message. Officer Holmes returned the call and recognized the unnamed man's voice as that of an informant who had previously supplied Holmes with reliable information which had resulted in convictions. The informant advised Holmes that a dark blue, 1965 or 1966 Plymouth, with license # EAX-169, was on its way to Mount Olive from the town of Faison to the south. He also stated that defendants Armwood and Lee would be in the car along with an unknown third individual and that the car's trunk would contain stolen guns and other merchandise. He further reported the approximate direction from which the car was coming and estimated its time of arrival to be within the next 10 or 15 minutes. Holmes relayed the information to Officer Billy Bonham and instructed him to be on the lookout for the car.

Approximately 40 minutes later, Bonham spotted a vehicle fitting the description given by the informant and bearing license # EAX-169. Inside the car were the three defendants. When Bonham first observed the car it was moving, but it stopped, and defendants Frederick and Lee got out of the car and went into the house of a friend. Bonham approached defendant Armwood and asked to see his operator's license, whereupon Bonham noticed a tape deck, stereo set and speakers in the back of the car. Armwood explained that the stereo equipment belonged to his girl friend, that it had just been repaired, and that he was on his way to take it back to her. Bonham walked to the house and asked to speak with Frederick. Frederick explained that the stereo equipment was broken and belonged to his girl friend and that they were on the way to Goldsboro

to have it fixed. Bonham went back to the car and asked Armwood, who owned the car, if he would open the trunk. Armwood replied that, while he did not mind opening the trunk, the lock was broken and could not be opened. The lock had been taken out of the trunk, leaving a hole. Bonham searched for a screwdriver to open the trunk but could not find one, so he asked if Armwood would follow him to the station where they could get a screwdriver to open the trunk. All defendants agreed to go to the station. Armwood drove his car, Frederick rode with Bonham, and Lee accompanied Officer Matthews.

After they arrived at the police station, Bonham left to get a screwdriver. However, Armwood changed his mind and demanded a warrant to search the car, so Bonham went to the Magistrate's Office and a warrant was issued. The warrant was read to Armwood, and Bonham opened the trunk where he discovered three rifles, three television sets, clock radios, and other merchandise.

At this point in the evidence presented on voir dire, the trial judge granted the motions to suppress the search warrant, finding as a fact that "the search was in violation of the Constitutional Rights of the three defendants." The court also found as a fact "that when the three defendants, some of whom got into the police car, and some of whom drove the Plymouth automobile to the police station . . . were placed under arrest for all intents and purposes; and that the arrests were illegal and in violation of the defendants' Constitutional Rights."

The State appeals from the allowance of defendants' motions.

*Attorney General Edmisten, by Associate Attorney Sandra M. King, for the State.*

*John Parker and Herbert Hulse for defendant appellees.*

MORRIS, Judge.

In its first assignment of error, the State contends that the trial court erred in its finding that the search of the car was in violation of defendant's constitutional rights. The search warrant involved in this case states, *inter alia:*

"The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: Af-

fiant states that he has received numerous calls stating he has firearms in trunk of veh., and when asked if officer could look in the trunk, he refused to allow it."

The State concedes that the search warrant was defective, but argues that there were other constitutionally acceptable grounds to search defendant's automobile. We agree.

Of course, evidence which is obtained as a result of an unreasonable search and seizure may not be admitted in either the State or Federal courts. U.S. Const., Amend. IV, V, and XIV; N.C. Const., Art. I, § 20; *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961); *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975). However, all searches and seizures are not prohibited. The Constitution proscribes only those which are "unreasonable." *Carroll v. U. S.,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925); *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970). In most instances, the procurement of a warrant is a prerequisite for a valid search or seizure. "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court,* 387 U.S. 523, 528-29, 18 L.Ed. 2d 930, 87 S.Ct. 1727 (1967).

[1, 2] One of the types of cases excepted from the general warrant requirement is that involving the search of a motor vehicle. Due to its mobility, an automobile may constitutionally be searched without a warrant if there is probable cause to make the search. *Carroll v. U.S., supra; Brinegar v. U. S.,* 338 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302 (1949); *State v. Ratliff,* 281 N.C. 397, 189 S.E. 2d 179 (1972). In the present case, Officer Bonham acted pursuant to information from the informant, who had given Officer Holmes a detailed description of defendants and their car and had advised the officer of the stolen nature of the goods in the vehicle and defendants' approximate time of arrival in Mount Olive. On these facts, Officer Bonham had probable cause to search the vehicle. *Accord, see State v. Harrington,* 283 N.C. 527, 196 S.E. 2d 742, *cert. denied,* 414 U.S. 1011, 38 L.Ed. 2d 249, 94 S.Ct. 375 (1973). Furthermore, the fact that the car was not searched until after defendants had accompanied the officers to the station did not invalidate the search. "If there is probable cause to search the automobile at the place where it was stopped, it matters not that the search

is conducted some time later after the automobile has been transported to the police station." *U. S. v. Chalk*, 441 F. 2d 1277, 1279 (4th Cir. 1971), citing *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970).

Since there was probable cause to search the car, we do not reach the issue of whether the defendants were under arrest at the time the car was searched. The order is

Reversed.

Judges HEDRICK and ARNOLD concur.