333 F.Supp. 923 (1971)
Osborne J. DYKES, III, Plaintiff,
v.
Eugene CAMP et al., Defendants.
No. 70 C 528(3).
United States District Court, E. D. Missouri, E. D.
September 30, 1971.
*924 Osborne J. Dykes, III, pro se.
John J. Fitzgibbon, Associate City Counselor, St. Louis, Mo., for defendants.
WEBSTER, District Judge.
Plaintiff brings this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 alleging that defendants unlawfully deprived him of his constitutional rights to be free from unreasonable search and seizure and unlawful arrest in violation of the Fourth and Fourteenth Amendments. The case was tried to the court. The testimony reveals the following: On September 23, 1970 an informant known as Frank Gajo telephoned Detective Darrell Ruediger, a defendant in this case, to tell him that one Petrina Monti had in her possession 50 to 60 desoxyn tablets and that she was going to transport the drug to the Gaslight Square area of St. Louis, but no time was given.
On the evening of September 24, while cruising in an unmarked car, Ruediger spotted Monti riding in an automobile in *925 which plaintiff was the driver and which was heading East on Forest Park Boulevard. He ordered plaintiff to pull over near the Euclid Avenue intersection. Derogatory remarks emanated from one or more passengers of the car. All the occupants of the car, including plaintiff, were ordered out of the car. Plaintiff was patted down in a superficial search. Both the passenger compartment and trunk were searched. Then plaintiff was permitted to drive his car to the police station, rather than having it towed at his expense. None of the searches were by consent.
At police headquarters, plaintiff's car was thoroughly searched for contraband and plaintiff was asked several questions, relating only to his identity. After some 90 minutes, plaintiff was released.
At the trial, plaintiff failed to establish any actual pecuniary damages, or that any record of the incident was preserved at police headquarters. His only damage as alleged in testimony was embarrassment and humiliation at being stopped on a public highway in plain view of passers-by.
Two facts were stipulated by the parties: First, that prior to September 24, 1970, Gajo was a reliable and credible informant; and, second, that defendants were acting under color of state law in the conduct of the arrest and search. The central disputed issue of fact in the case is whether defendant Ruediger actually received the tip from Gajo as he testified, and the crucial issue of law is whether the conduct of the police officers toward plaintiff was lawful, assuming Ruediger did in fact receive the tip.
Plaintiff offered testimony showing that on September 23, 1970, the approximate date when the informant told Officer Ruediger he had seen Monti at her home at 6116 Pershing, where he received the information which he passed on in the tip, Monti did not, in fact, reside at that address. Ruediger testified under oath that he had received the tip from Gajo, and this was corroborated by Gajo's deposition offered into evidence by plaintiff. Plaintiff's evidence does not directly challenge the credibility of Officer Ruediger. Rather, it raises questions about either the credibility or the reliability of the informant Gajo. However, probable cause to arrest on an informant's tip depends upon the reliability and credibility of the informant and not the accuracy of the subject matter of the tip. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Plaintiff's stipulation, supra, disposes of this fact issue in favor of defendants.
Plaintiff complains that his civil rights were violated by defendants and others on the night of September 24, 1970 when plaintiff's automobile was stopped; the passenger compartment of his car was searched; the trunk was searched; plaintiff's person was searched; and plaintiff and his vehicle were transported to the police station, where plaintiff was detained and a complete search of the car was conducted.
Probable cause. At the time his car was stopped, plaintiff and his passengers, including Petrina Monti, were observed traveling East in plaintiff's automobile along a normal route to Gaslight Square, about three blocks away. (Plaintiff testified that he was in fact enroute to a bar in Gaslight Square.) Officer Ruediger, in addition to the tip supplied by an informant of conceded reliability, knew Monti to be a narcotics user. The court finds that defendants had probable cause to stop plaintiff's car and to arrest Monti, as they had reasonable grounds to believe that Monti was at that time in violation of state narcotics laws.
Search of the automobile, passengers, compartment. The arrest being lawful, defendants were entitled to conduct a search incident to the arrest. The search of the compartment in which Monti had been a passenger was a permitted search of a movable vehicle without a warrant. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 *926 (1925). The subsequent search of the automobile at the station house, in lieu of the night conditions existing at the busy intersection where the arrest occurred, can likewise be justified. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
Search of the trunk. The search of the trunk of plaintiff's automobile was not lawful. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; State v. Witherspoon, 460 S.W.2d 281 (Mo.1970). However, plaintiff has failed to show which police officer made this search and each of the named defendants who were present denied making the search or ordering that it be done. There was testimony that Officer Benson, not a defendant, conducted this search. This is not a conspiracy case and there can be no joint tort feasors under the statute unless it can be shown that the defendants participated in the specific acts complained of. 42 U.S.C. § 1983.
Search of plaintiff's person. No search of plaintiff's person could be justified as a search incident to the lawful arrest of Petrina Monti. "A person by `mere presence in a suspected car' does not lose immunities from search of his person to which he would otherwise be entitled." United States ex rel. McArthur v. Rundle, 402 F.2d 701 (3rd Cir. 1968). See also United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). However, a mere "patdown" can be justified under the "stop and frisk" rule.
Stop and frisk is designed to protect the police officer, where he has "reason to believe that he is dealing with an armed and dangerous person, regardless of whether he has probable cause to arrest the individual for a crime". Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circumstances present at the time the automobile was stoppedthe informant's tip regarding Montithe known narcotics records of other passengers in the automobile, the derogatory exchange of remarks between passengers and police, while not enough to constitute probable cause to arrest plaintiff, were sufficient to give the officers reason to believe that they were dealing with an armed and dangerous person or persons, and therefore to justify a pat-down for weapons.
Plaintiff cites United States v. Bonds, 422 F.2d 660 (8th Cir. 1970). This case holds that even without probable cause for arrest, officers "* * * have a right under appropriate circumstances to stop and interview a person for purposes of investigation. In such a situation, a limited exception to the search warrant requirement exists allowing officers to search the person and immediate vicinity for weapons where the officers have reason to believe their safety is endangered." The court finds from the credible testimony that the search of plaintiff's person went no further than a pat-down, was reasonable under the circumstances involved, and therefore did not violate plaintiff's civil rights.
Transportation of plaintiff and vehicle to police station, where detained. Chambers v. Maroney, supra, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) held that a warrantless search of the automobile may be made at the police station where probable cause existed at the time of the arrest:
"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant."
"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped * * *."
(Footnote No. 10) "It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point *927 was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." (399 U.S. 42, 52, 90 S.Ct. 1975, 1981)
In an affidavit, Officer Ruediger stated, "I further reasonably believed that the driver of the automobile, Osborn Dykes, III was involved in the transfer of the drugs for he was driving the automobile heading towards Gaslight Square with Petrina Monti." Substantially all of plaintiff's case presented in court had the purpose of refuting the defendant Ruediger's claim of probable cause to arrest the plaintiff. But this claim, appearing only in Ruediger's pretrial affidavit, was never introduced into evidence. At trial, Ruediger testified that at not time did he ever believe or have reason to believe the plaintiff was committing a felony, and that he stopped plaintiff's car only because Petrina Monti was riding inside and he believed she was engaged in the commission of a crime.
As to the trip to the police station which followed the stop and frisk, plaintiff concedes that he was advised at the time that he was not required to accompany the vehicle, that he was free to go but that he would have to pay a towing charge, and that the avoidance of this payment was extended to him as a courtesy. The questioning at the station house was limited to his identity and address. Plaintiff failed to prove involuntary detention there by defendants. Plaintiff drove his car to the station, rather than having it towed by the police. This, without more, was no arrest and detention.
There are two specifications which plaintiff must prove by a preponderance of evidence in order to recover under § 1983: (1) The conduct complained of must have been done by some person acting under color of law; and (2) Such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities secured to him by the Constitution and laws of the United States. Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965). In this case, the first specification has been stipulated to by defendants. The second specification, which requires proof that a particular defendant's conduct caused or subjected plaintiff to a deprivation of any constitutionally protected right, has not been established by plaintiff at trial by a preponderance of the evidence. In his testimony, plaintiff was unable to identify with particularity which defendant searched his person, or the trunk of his car, or which defendant, if any, detained him on Forest Park Boulevard (after the legally justified stop and frisk), or which defendant, if any, detained him at the police station. John Doe pleadings will not suffice. Tolefree v. Ritz, 382 F.2d 566 (9th Cir. 1967).
On the whole record, the court finds and concludes that the defendants acted on probable cause in stopping plaintiff's vehicle containing Petrina Monti; that they acted reasonably thereafter in the frisk of plaintiff's person; the search of the passenger compartment incident to Monti's arrest; the subsequent removal of the automobile and the routine information obtained from plaintiff at the station while plaintiff was not under arrest or in custody. The search of the trunk of the car may have been a technical invasion of a constitutionally protected right. However, no seizure of contents resulted and plaintiff could not identify which, if any, of the defendants, opened the trunk, and thereby failed in his burden of proof.
Under the facts in this case, even if a technical invasion of a federally protected right was found to have occurred, which this court finds otherwise, plaintiff would be entitled to no more than nominal damages. No monetary damages were alleged or proved. While such proof is not required under Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961), the absence of such injury is noted. Furthermore, the defendants *928 acted reasonably and in good faith in the circumstances, and there would be no basis for any award of exemplary damages. cf. Bowens v. Knazze, 237 F.Supp. 826 (N.D.Ill.1965).
In finding for the defendants, the court does not imply any improper conduct by plaintiff. The plaintiff, at the time of the trial, was in military service and attended law school during off hours. He elected to represent himself. The court found him credible and believes this action was instituted in good faith. The proof, however, did not substantiate the claim to a violation of a federally protected right under 42 U. S.C. § 1983.
The clerk will enter judgment in favor of defendants and against plaintiff. So ordered.