489 P.2d 288

**STATE of Arizona, Appellee,**

**v.**

**Thomas Lloyd GERRY, Appellant.**

**No. I CA–CR 378.**

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 6, 1971.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Stidham & Galusha, by Charles C. Stidham, Phoenix, for appellant.

JACOBSON, Presiding Judge.

The principal question raised in this appeal is whether there was sufficient evidence to submit to a jury the question of defendant's possession of marijuana.

The defendant, Thomas Lloyd Gerry, was convicted by a jury in Maricopa County, Arizona, of the possession of marijuana. On appeal from this conviction defendant, in addition to the sufficiency of the evidence question, also raises an issue as to the warrantless search of the vehicle in which he was a passenger and in which the marijuana was found.

The facts necessary to place this matter in perspective are as follows: On the morning of September 3, 1970, between 7 a. m. and 8 a. m., a Phoenix police officer received a tip from a confidential informer that three men, ages 20 to 25, were checked into a motel in Phoenix, Arizona and they were driving a Ford station wagon, white over tan, with South Dakota license plates. This tip further advised that these men had come from Minnesota with more than $5,-000 for the purpose of purchasing marijuana. Furthermore, the tip continued, the three men had dangerous drugs in their possession and they planned to check out of the motel around noon and then proceed to Tucson to buy marijuana.

This information was relayed to State Narcotics Agents who commenced a surveillance of the vehicle at the motel at approximately 11:50 a. m. The evidence was clear that the only purpose of the surveillance was to observe the anticipated sale of marijuana and make arrests and confiscation at the time of sale. Within an hour after the narcotic agents arrived at the motel, the three men left and proceeded to drive around Phoenix. During the course of their wanderings, the three men picked up two hitchhikers. The undercover narcotics agents followed the car until approximately 5 p. m., at which time the occupants became aware that they were

being followed. The suspects stopped their car, blocked the street, and all five occupants approached the agents' car, the agents being in civilian clothes and in an unmarked vehicle. One of the suspects approached the agents' car with a knife in his hand and made menacing gestures. Upon one of the suspects seeing a microphone in the car, he alerted the others and all five immediately dispersed. At this point the agents pursued the five men, identified themselves, placed them under arrest in the immediate vicinity of the station wagon and advised them of their constitutional rights.

The vehicle was searched and a usable amount of marijuana was found in the glove compartment. Defendant had been sitting on the right side of the front seat by the glove compartment before leaving the car. A vial of dangerous drugs was also found on top of a mattress in the back seat. In addition, $5,400 in cash and a revolver were found in a tire well beneath the floor of the car.

In response to questions by the agent, the defendant stated that the car and the money belonged to him and that he had obtained the car in South Dakota. A search of the defendant's billfold produced a list in the defendant's handwriting. This list contained the words "lids", "mescaline", and "speed"; in addition, various numbers appeared in a column next to these words. Also, a bill of sale naming the defendant as vendee of the Ford station wagon was found in his billfold which defendant explained was to be used in the event there was difficulty in getting the car across the border to Mexico.

Defendant first contends that A.R.S. § 36–1002.05 expressly applies only to a person "who *knowingly* possesses any marijuana". He therefore argues that the evidence required a directed verdict on the ground that no reasonable person could have found that he "knowingly" possessed the marijuana found in the glove compartment of the car in which he was a passenger. In State v. Carr, 8 Ariz.App. 300, 445 P.2d 857 (1968), the following standard for determining "knowing" was stated:

" * * * Although possession may be shown by direct or circumstantial evidence, the evidence must link the defendant to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the narcotics' existence and of its whereabouts. (citation omitted)." 8 Ariz.App. at 302, 445 P.2d at 859.

However, " * * * the mere presence without more in an apartment or car of unobviously placed narcotics will not convict the owner or inhabitant of possession." State v. Harris, 9 Ariz.App. 288, 451 P.2d 646 (1969). Moreover, we have recently held that in the case of hidden narcotics, mere dominion and control of the locale where the narcotics were found is insufficient alone to sustain a conviction of knowing possession. State v. Hull, 15 Ariz.App. 134, 486 P.2d 814 (1971). However, the fact of dominion is a circumstance which, when considered with other evidence showing knowledge, is sufficient to sustain a conviction of knowledgeable possession. State v. Hull, *supra*.

The pertinent facts, together with the fact of dominion, from which a jury could find a reasonable inference of "knowing possession" in this case, are as follows: The informer's information fit the general description of all three men and of the defendant's Ford station wagon with South Dakota license plates; the defendant admitted ownership of the $5,400 found therein; immediately preceding the confrontation with the agents, the defendant had occupied the passenger's seat in the right front seat which was in very close proximity to the glove department where the marijuana was found; the defendant's action in confronting the agents' car which was following them gives rise to an inference of guilty knowledge, and the defendant's flight after ascertaining that the occupants of the automobile were police officers reinforces this inference. Also, the list found in defendant's possession which contained slang names of narcotics must be considered. Under the totality of

these circumstances, we find the trial court properly submitted to the jury the question of defendant's knowing possession of marijuana found in his car. When we add to this defendant's wholly unbelievable and inadequate explanation of the items listed on the paper found in his billfold, we find that the evidence was sufficient to sustain a conviction of knowing possession. *See,* State v. Love, 8 Ariz.App. 180, 444 P.2d 737 (1968).

■ Defendant's second contention pertains to the validity of the warrantless search and seizure, stressing that the police had approximately five hours in which to procure a warrant. As was pointed out in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the automobile occupies a unique position in the law of search and seizure:

> "Automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or of an office, provided that there is probable cause to believe that the car contained articles that the officers are entitled to seize." 90 S.Ct. 1975 at p. 1979.

This rule pertaining to warrantless search of automobiles was amplified by the United States Supreme Court in the case of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where the Court said:

> "No amount of probable cause can justify a warrantless search and seizure in the absence of exigent circumstances."

The court went on to explain that "exigent circumstances" include "the warrantless search of an automobile stopped on the highway, where there is probable cause, and because the car is moving and the occupants are alerted and the car's contents may never be found again if a warrant must be obtained."

In this case, "exigent circumstances" were obviously present. Based on the informer's tip the narcotics agents were keeping the defendant's automobile under surveillance, not for the purpose of arresting for possession of dangerous drugs, but for the larger purpose of confiscating a large amount of marijuana in a sale situation. As was stated by one of the narcotics agents involved,

> "Q What was the purpose of your following them?
>
> "A The information we had was that they had at least $5,000 that they were going to buy approximately one hundred kilos of marijuana with, and this was in cash on one of the persons. And we were following to see where their connection would be, where we heard that it was going to be in Tucson, and we wanted to find out just who they purchased the kilos from.
>
> "Q Were you intending to follow them to Tucson?
>
> "A We would have followed them wherever they went to score.
>
> "Q What prevented you from following them?
>
> "A They stopped me."

The agents when thus confronted were placed in the awkward position of either having to fish or cut bait. The agents under these emergency conditions, elected to proceed with an arrest. Their failure to do so would obviously have allowed the defendant and the contents of the automobile to escape. We hold that the failure to obtain a search warrant under these circumstances was not unreasonable. Thus, the defendant's contention that the officers did have sufficient time to procure a search warrant is unsupportable.

■ This then brings us to the problem of whether probable cause existed for an arrest at the time and whether the ensuing search was valid as a search incidental to an arrest. *See,* State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965). Aside from the informant's information that the vehicle contained dangerous drugs, when the five occupants emerged from defendant's car, one of them carried a knife in his hand, and approached the agents' car in a menacing

manner. The evidence is further clear that all five occupants at this point were acting in concert. This alone would afford the officers probable cause to believe that a crime was being committed; hence the arrest was valid. The search of the defendant's person and the area within his immediate control—his car—was justified. Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969);

> "There is ample justification, therefore, for a search of the arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

Judgment affirmed.

EUBANK and HAIRE, JJ., concur.