UNITED STATES of America ex rel. James McNEIL

v.

Alfred T. RUNDLE, Superintendent.

Misc. No. 4068.

United States District Court, E. D. Pennsylvania.

March 18, 1971.

Norman Henns, Philadelphia, Pa., for McNeil.

Arlen Specter, Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

MASTERSON, District Judge.

This is a petition for a writ of habeas corpus by James McNeil (hereafter, the relator), a state prisoner, who attacks the validity of his conviction and incarceration on concurrent sentences of from two to ten years imposed upon Bills Nos. 222 (burglary, larceny and receiving stolen goods) and 226 (aggravated robbery), September Sessions, 1966. Relator was found guilty by a judge sitting without a jury. After the trial judge denied post-trial motions, relator appealed to the Pennsylvania Superior Court where the conviction was affirmed. See Commonwealth v. McNeil, 212 Pa.Super. 702, 239 A.2d 475 (1968). Thereafter, relator petitioned the Pennsylvania Supreme Court for *Allocatur,* which petition was denied *per curiam* on June 5, 1968. In each of these petitions, relator was represented by counsel.

After having satisfied ourselves that relator has exhausted his state remedies, we appointed counsel to represent the relator and held a hearing. Since we are dealing here with convictions upon two separate offenses which occurred at different points in time, and since different questions are raised concerning the two convictions, we shall discuss them separately.

### BILL NO. 222

Bill No. 222, charging burglary, larceny and receiving stolen goods, relates to an offense committed on June 13, 1966, when a number of Timex watches were taken from Sneidman's Pharmacy, 451 South 56th Street in Philadelphia. Relator attacks his conviction on this Bill by alleging that evidence consisting of an empty Timex watch carton and a hinge from a watch carton was taken from the trunk of his automobile pursuant to a warrantless search while the auto was in the custody of the police,

and was improperly introduced into evidence at his trial.

Shortly after midnight, on June 13, 1966, Wanda Gray, who lived across the street from Sneidman's Pharmacy, saw a man, with a large stone in his hand, standing near the pharmacy window. After shouting "Don't throw it!", she called the police. Upon hearing a window crash, she looked out and saw a man come out of the pharmacy with a box and walk down the street to a point where she saw the trunk of a red car open. Moments later the police arrived and the burglar fled through an alley. The proprietor of the pharmacy noticed that his front door was smashed in, and that a Timex watch showcase, with 20 watches in it, was missing. Mrs. Gray pointed out to Police Officer Scarbrough the red car whose trunk she saw open. Since this was the only red car on the block, Officer Scarbrough guarded it until Detective Gruver arrived. After speaking with officers on the scene and with Mrs. Gray at approximately 12:50 A.M., Detective Gruver observed some small slips of paper and a price tag for a Timex watch right behind the red car and another slip of paper on the car's rear bumper; that the door on the right side was open; that, when he looked in, he saw on the sun visor the title to the motor vehicle and a brown pass case which contained an owner's registration card. Both documents bore the relator's name and address. Detective Gruver did not then attempt to open the trunk of the car, but instead had the car moved to the police garage.[1] After failing to locate the relator at the address given on the vehicle registration cards, Detective Gruver returned to his district, only to discover that the red car had been removed from the unattended police garage, leaving behind a side strip of chrome metal. At approximately 3:00 A.M., Officer Scarbrough located the missing auto parked several blocks away and, upon searching in the vicinity of the car found sixteen empty watch cases on a fire escape at the second floor of a nearby home. The car was then returned to the police garage where it was observed that the chrome strip was missing and that the right side was scraped. To prevent a possible reoccurrence, the car was rendered mechanically inoperative.

At that time, approximately 3:30 A. M., Detective Gruver attempted, unsuccessfully, to locate a magistrate who could issue a search warrant authorizing him to open the trunk of the car. At trial, Detective Gruver testified as to his past experience that he could not reliably anticipate the arrival of a magistrate at his precinct even as soon as 9:00 A.M., which was five hours away; that on many occasions in the past he had been unsuccessful in attempts· to reach magistrates at their homes by telephone at early morning hours; that on this occasion he made a telephone call to the Police Administration Building where a magistrate normally could be located, but that he was informed that none were available. He further testified that, since at that hour no police personnel were available to guard the automobile, which had already disappeared once when unguarded, he then forced the trunk open with a crowbar and found therein one Timex wrist watch case and a hinge to another. He noted that the case contained a price tag similar to the tags found earlier that morning behind the car near the scene of the crime. These items were introduced into evidence at the trial. A warrant for the relator's arrest was issued, but he was not apprehended until his arrest for charges made in Bill No. 226, *infra*.

■ From the recitation of the above facts, it appears that there were two warrantless searches made of the relator's car. The first involved the observation by Detective Gruver of the rela-

---

1. No objection was raised regarding the seizure of the car by the police. In any event, we deem this action by the police to have been reasonable under the circumstances.

tor's title and owner's card, which was in a pass case, located on the sun visor in the car. Under the exigent circumstances in which this limited "search" was performed, we are compelled to conclude that it was reasonable, founded on probable cause and did not require a search warrant. It was approximately 1:00 A.M. and the police were involved in the investigation of a burglary. The suspect had been seen fleeing the scene just moments before. The car was identified to the police as a likely depository of the stolen goods, a fact corroborated by incriminating materials found on the car's rear bumper and behind the car. The car was open, the identification data was in view, and time was of the essence. Since the police had probable cause to believe that the owner of the car was involved in the burglary, it was reasonable to observe the identification data to materially aid in the apprehension of the burglar.

■ The second warrantless search complained of took place at police headquarters when Detective Gruver pried open the trunk of the car with a crowbar. Here, too, we find that under the circumstances, the warrantless search of the contents of the car trunk was constitutionally permissible. It should be recalled that the trunk was not opened until after the following had occurred: the car had been identified to the police as a likely depository of the stolen goods; the robber had not yet been apprehended; the car was stolen out of the unguarded police garage but was later relocated and returned; in the vicinity where the car was relocated, sixteen empty Timex watch cartons were found. Clearly, under these facts, the police had probable cause to search the trunk of the car for the fruits of the robbery. The only question, then, is whether it was proper to search without first obtaining a warrant.

Prior to the Supreme Court's recent opinion in Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), it had generally been held that even where probable cause existed, a warrantless search of a car was forbidden unless made incident to a valid arrest or justified by exceptional circumstances, such as a significant possibility of removal or destruction of the object of the search. See generally Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270, 273 (1964), and cases cited therein. Chambers, supra, however, relaxed this standard by holding that where, as here, the searching officer has probable cause to search the car for evidence of the crime, it is reasonable under the Fourth Amendment to immediately search the car without a warrant. See Chambers v. Maroney, 399 U.S. at 52, 90 S.Ct. 1975, 26 L.Ed.2d 419. Even under the more rigorous pre-Chambers standard, we believe that the warrantless search can withstand constitutional attack because: (1) the searching officer had probable cause to search the car for evidence of the crime; and (2) the presence of the following exigent circumstances: (a) the suspect was still at large; (b) the unsuccessful attempts to contact a magistrate; (c) unavailability of police personnel to guard the car which had already been once removed from police "custody"; (d) at the time of recovering the car which had been removed from the police garage, evidence was found near the car, which fact would reasonably lead the police to believe that attempts were, and may further be, made to destroy or conceal the evidence; and, (e) a magistrate would not be available for at least 4 or 5 hours.

Since we have found the searches of relator's car to have been legal, we conclude that the trial court did not err in refusing to suppress as evidence the fruits of the searches.

### BILL NO. 226

This Bill charged aggravated robbery and related to an offense which occurred on July 16, 1966, when one Lee Parker was assaulted and had his wrist watch stolen. It is relator's contention that it was prejudicial error for the trial court not to suppress as evidence a wrist

watch which was taken from the relator's pocket at the time of his arrest.

The circumstances leading to relator's arrest may be summarized as follows: Lee Parker testified that on July 15, 1966, at approximately 11:00 P.M., after stopping at a bar for a drink, he was walking on Larchwood Avenue in Philadelphia towards his home, when two or three persons assaulted and brutally beat him. Parker testified that he could not make a positive identification due to darkness and dizziness at the time. At trial a gold watch was exhibited which Parker identified as being similar to the round, gold watch which had been stolen from him during the aggravated robbery.

Officer Richard Napoliello testified that at 1:40 A.M. on July 16, 1966, he received a call over his police car radio announcing, "5900 block of Larchwood Avenue, strong-arm robbery in progress." A short time later, as he reached the location, another call came over the radio which advised: "Be on the lookout for a colored male, wearing dark clothing and a straw hat." At that moment, the officer observed a black male fitting the description standing behind a panel truck parked on the northeast corner of 59th and Larchwood Avenue on 59th Street. The man observed was standing near the front of the truck and was looking through its windows west on Larchwood Avenue at oncoming police cars. Officer Napoliello, who was proceeding west from 58th Street on Larchwood Avenue, was therefore at the relator's back. The officer turned his patrol car and stopped even with the truck. When he climbed out of his car the observed suspect was no longer visible, but when Officer Napoliello looked underneath the truck, he found the relator. After apprehending the relator with his hands, the police officer made a quick "frisk" of relator's outer clothing and felt a hard object in the suspect's right front jacket pocket. Officer Napoliello then placed his hand in the pocket and removed the object, which turned out to be a round gold watch. It was this watch which Parker identified at trial. When asked how he came to have it in his possession, the relator replied that he had found it.[2]

When the relator testified at trial, he denied robbing Parker, but admitted that he had been in a bar on the night in question until 10:30 P.M. He also testified that he had been in a fight with Parker and an unidentified man around 11:00 P.M. on that night; that he left the scene after two boys chased the two other men down the street; and that he found the watch lying on the ground at 59th Street and Larchwood Avenue. The relator also denied that he was under the truck for the purpose of hiding when he was found by Officer Napoliello, stating that he was there only to retrieve some change which had dropped out of his shirt pocket.

■ The issue raised by the above rights under the Fourth Amendment. Dispositive of this issue, however, is our determination as to whether the warrantless search of the relator's clothing and person was constitutionally permissible. We are convinced that it was.

■ Initially, we find that relator was "arrested" (or "seized") when Officer Napoliello apprehended him from underneath the panel truck and restrained relator's freedom to walk away. See Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct.

2. In his habeas corpus petition, relator also attacked the use at trial of this statement since it was given without sufficient warning of his constitutional rights. During the hearing before this Court, relator's counsel argued that the important issue with regard to the police procedures at the time of McNeil's arrest was not the use of the post-arrest statement but rather was the search of the relator's person and seizure of the watch. We agree with counsel that this claim by the relator is without merit as the statement was exculpatory rather than incriminating and its introduction into evidence was not prejudicial to the relator.

1868, 20 L.Ed.2d 889 (1968). Further, we conclude that Officer Napoliello had probable cause to arrest the relator at this point because of the following combination of factors: (1) his knowledge that a robbery had been committed; (2) relator matched the description of the robber; and (3) relator's unusual and suspicious conduct. Thus, the subsequent limited search[3] of the relator's clothing and person, made incident to a lawful arrest, was valid and the fruit of that search (*i. e.* the watch) was admissible in evidence. See Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

Even were we to find that no probable cause existed for the arrest of the relator, we would nonetheless conclude that the search was valid. Officer Napoliello knew that a robbery had been committed when he noticed the relator, who fit the description of the robber. Add to this the subsequent unusual and suspicious conduct of the relator and it was reasonable for Officer Napoliello to conclude that the relator may be involved in criminal activity, and that the relator, a suspected robber, may be armed and dangerous. See Terry v. Ohio, *supra*; Commonwealth v. Berrios, 437 Pa. 338, 263 A.2d 342 (1970). Officer Napoliello did not engage in an unrestrained and thorough examination of relator and his personal effects. However, while patting down relator's outer clothing, Officer Napoliello felt a hard object in his pocket which might have been used as a weapon. He seized the object and discovered it to be a watch, a potential item of evidence of the crime of robbery. Thus, the search was reasonably limited in scope to the accomplishment of the goal which justified its inception—the protection of the officer by disarming a potentially dangerous man. Accordingly, even were we to find that there was no probable cause to arrest relator, the search of his person was constitutionally

permissible and the fruit of that search was properly admissible in evidence. See Terry v. Ohio, *supra*.

Relator's petition for a writ of habeas corpus will, therefore, be denied.

---

3. We have no doubt that the "frisking" of relator's clothing and person was a search within the purview of the Fourth Amendment. See Terry v. Ohio, *supra*.