## Commonwealth v. Lewis

*Judith N. Frankel,* Assistant District Attorney, for Commonwealth.

*William A. Fitzpatrick,* for defendant.

R. B. KLEIN, J. (Specially Presiding), June 15, 1972.—On February 11, 1972, at about 12:15 a.m., Philadelphia police officers executed a search warrant they had secured for 4555 Ditman Street, Philadelphia. The warrant named Jean Holloway and James Swanson as persons to be searched.

While in the house, the officers called for policewomen to search defendant, Barbara Jean Lewis, to ascertain whether a six-inch bulge over her breast was caused by a bundle of heroin concealed under her blouse. Defendant was not named in the warrant, but was a neighbor visiting in the named premises. The question raised is whether all of the circumstances justify the decision of the police officers to order a search of defendant. It is the opinion of the court that the circumstances justified the search.

The court ruled during trial that the search warrant itself was validly obtained.

## FINDINGS OF FACT

On the basis of the facts as found by the court and read into the record, the police had the following information at the time they ordered the search of defendant:

1. *Reliable informant.* The police received information from an informant that had previously given information leading to six arrests. Two arrests resulted in convictions; four cases are still pending.

2. *Informant's information.* The informant told the police he had been in the house at 4555 Ditman Street twice in February, and had observed Jean Holloway and James Swanson sell others a bundle of 25 glazed paper packets of heroin for $125. The informant also told the police that he had seen 10 to 15 25-bag bundles of heroin in the living room of the house.

3. *Officer's surveillance.* A police officer conducted a surveillance on February 9, 1972, and saw 13 adults enter the building singularly and in pairs, stay a short time and then leave. The officer had seen five of the 13 at the Narcotics Headquarters of the Police Department, where they were being held for investigation, and knew that at least two of the five had been arrested for narcotics offenses.

4. *Persons in the house.* When the officers came to the house on February 11, 1972, shortly after midnight, and identified themselves and showed the search warrant, they were met at the door by James Swanson, a person named in the warrant. They went to the kitchen, where defendant and three other persons were seated around the kitchen table. These were the only persons in the house. Jean Holloway, the other person named on the warrant, was not in the house.

5. *Actions to frustrate the search.* As the search began, all five occupants of the house started moving around in such a fashion that the search could not be properly conducted. The occupants stated that the search was improper and they did not have to remain.

6. *Defendant's nervousness.* The officer testified, and the court believes, that defendant, Barbara Jean Lewis, became very nervous.

7. *Defendant's request to leave.* Defendant asked if she could go home to check on her children. She does live down the street and does have children.

8. *The bulge.* Perhaps the key factor that led to the search was a bulge over the top of defendant's left breast which the officer first noticed when defendant asked to leave. The bulge was larger than a cigarette pack, six inches in length and rectangular in form. Although defendant is a heavy woman, the bulge noticed was not the kind of bulge that would be connected with her body or her apparel.

9. *Defendant's denial.* When asked what the bulge was, defendant said, "Nothing, it's me."

## JUSTIFICATION FOR SEARCH

The court holds that these nine factors justify the search on three independent grounds:

A. Under these special circumstances, the due and proper execution of the search warrant rationally comprehended within it the right to examine the bulge over defendant's breast to see if her clothing was the container for the contraband for which the police were searching.

B. Under these special circumstances, the officers had probable cause to believe that the bulge was caused by concealed heroin. Therefore, the search is proper as a search incident to a valid arrest.

C. Under these special circumstances, the officers

had probable cause to obtain a search warrant, and because of the exigencies of the situation, could properly make an immediate warrantless search to prevent the flight of defendant and the loss of the evidence.

## A. *Proper Search on the Basis of Search Warrant*

The facts of this case compel the conclusion that due and proper execution of the search warrant rationally comprehended the power to search defendant to determine the cause of the "bulge."

To hold otherwise would enable a suspect named on a properly obtained search warrant to frustrate the warrant merely by handing the contraband to another person on the premises.

It is noted that under recent decisions, before executing a search warrant, police officers must knock, announce their identity and purpose, and wait a reasonable period of time before forcibly entering a premises: Commonwealth v. DiMichael, 442 Pa. 553 (1971); Commonwealth v. Newman, 429 Pa. 441 (1968); Commonwealth v. McCloskey, 217 Pa. Superior Ct. 432 (1970).

These decisions require police officers to give suspects enough time to remove contraband from their person or from open view to conceal it. A common-sense corollary must be to give the officers the right to search those places in which the contraband might reasonably have been concealed. If the officers have reasonable suspicion that the goods for which they are searching have been given to a third person on the premises during the time they awaited an answer to their knock, a search warrant cannot be frustrated by precluding them from searching.

To resolve the issue of this case, it is not necessary to reach the question as to the authority of the police

under a warrant to search a third person who is merely on the premises. The factors cited above go far beyond mere presence to justify the conclusion that the heroin for which the officers were searching was contained in the bulge under defendant's blouse.

The officers first had reason to believe there was heroin in the premises from the information given by a reliable informant and from the surveillance. The officers found one of the persons named in the warrant, and saw that he had company. Suspicion was heightened when all of the occupants moved around to frustrate the search. Defendant attracted attention when she became nervous and asked to leave. Finally, the officers noticed a six-inch bulge under defendant's clothing, and when asked about it, defendant did not explain it but said it was "Nothing, just me." The person named in the warrant had the opportunity to have any heroin on the premises secreted under the clothing of defendant. The totality of circumstances indicated to the officers that the person named in the warrant took advantage of this opportunity. The search was justified.

In Walker v. United States, 327 F. 2d 597 (1963), the United States Court of Appeals for the District of Columbia considered facts similar to those before us. After a search warrant was issued, an officer came to the named apartment, found the door open and saw two people inside. After announcing his identity as a police officer and that he had a search warrant, he saw appellant, James Walker, pass to appellant, Ethel Woody, a brown purse wallet and a brown paper bag. The officer entered the room, arrested both appellants, and took from Woody the bag and wallet, which, in fact, were found to contain unstamped narcotics.

The court held that the execution of the warrant rationally comprehended within it the right of the offi-

cer serving the warrant to take from the hands of one of the occupants of the residence being searched the wallet and bag which contained the narcotics.

The court said, 327 F. 2d, at page 600:

"We think it not unreasonable for the officer to have supposed that the heroin on the premises might be in these containers. Had the paper bag been on a table or on the floor in the apartment, it would clearly have been within the ambit of the warrant. We do not think it was less so here because it was in appellant Woody's hands. To hold otherwise, on the facts of this case, would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand. No constitutional or statutory limitations that we know of require any such result.

"This is not to say that the authority conferred by a warrant to search premises is coterminous with that residing in a warrant to search the person. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222 (1948). . . . . There are obviously situations where the grant of the one cannot be enlarged to include the other. We hold only that, in the special circumstances shown by this record, due and proper execution of the warrant in question rationally comprehended within it the right to take the wallet and bag from the hands of appellant Woody."

Defendant cites Commonwealth v. Reece, 437 Pa. 422 (1970), as being dispositive of this issue. Reece is easily distinguishable. In Reece, a warrant was issued after a report of a pot party. The officers arrived at the scene at approximately 7:30 p.m. Guests arrived at the party from 8 p.m. to 12:30 a.m. It is noted that these persons *were* searched, and the Reece case did not involve any of these individuals. Reece came in at 12:30 a.m., and merely said he was looking for

someone who was at the party. At this point, the officer took Reece's coat and searched it. Thus, in Reece, because of the time defendant came and his statement that he was merely looking for a friend, there was nothing to indicate he was a participant in the party. He was not on the premises when the officers arrived, so could not have been handed any of the narcotics in the premises. He was not even there during the time the party would have been in full swing. In the instant case, defendant was on the premises with one of the persons named in the warrant at the time of the search. That, coupled with the fact that everyone started walking around, she became nervous and wanted to leave, had a six-inch bulge under her clothing, and her statement that the bulge was "nothing," gave the officers reason to believe that the items for which they were searching under the authority of the warrant were to be found under the clothing. Further, the court in Reece considered only whether the search was permissible as a search incident to a valid arrest. They never discussed whether the search of Reece could have been justified as a reasonable extension of the authority of the search warrant for the apartment.

The case of United States v. Di Re, 332 U.S. 581 (1948), also is not helpful to defendant. That case merely stands for the proposition that a warrantless arrest of a person in a car does not, without anything further, justify the searching of everyone in the car. An informant advised police that the owner of the car was selling counterfeit gasoline ration coupons. The police discovered the informant in the car with the owner, from whom the informer had just purchased coupons. The third person was merely sitting in the car, and was arrested without a warrant. It is clear that there was far less reason to suspect this third per-

son of having counterfeit gasoline ration coupons than there was of suspecting that Barbara Jean Lewis possessed heroin.

It must be remembered that the instant case does *not* involve merely a warrantless search incident to an arrest. This is a search warrant case.

Chimel v. California, 395 U. S. 752 (1969), which limited the right of police to go beyond the area from which a suspect might have obtained either a weapon or something that could have been used as evidence against him, was talking about *warrantless* searches. The court quoted Judge Learned Hand in United States v. Kirschenblatt, 16 F. 2d 202 (2d Cir.), for the proposition that a search warrant "would give more protection, for presumably it must be issued by a magistrate": 395 U.S., at page 767.

The fourth circuit, in Anglin v. Director, Patuxent Institution, 439 F. 2d 1342 (4th Cir., 1971), said:

"We think the Court in Chimel has clearly indicated that searches without search warrants, even incident to arrest, are not favored, and, conversely, that in order to encourage police use of them, searches and seizures pursuant to a valid search warrant will carry a presumption of legality."

This court will not allow supertechnicalities to frustrate the efforts of police officers acting under a validly-obtained search warrant to take such reasonable steps as are necessary to prevent the suspect from concealing the contraband.

B. *Proper Search as Incident to a Valid Arrest*

Because of the preference for the use of search warrants, the search of a third person as an extension of the search warrant might be permissible even if there were not sufficient grounds to arrest the third person for a crime. However, in this case there was probable cause for the officers to arrest.

To be lawful, an arrest without a warrant must be made with probable cause: Commonwealth v. Negri, 414 Pa. 21 (1964). Probable cause to arrest exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant the belief of a man of reasonable caution that an offense has been or is being committed: Commonwealth v. Negri, supra, at page 31. A search which is incident to a lawful arrest is valid and reasonable even though conducted without the prior issuance of a search warrant: Commonwealth v. Negri, supra, at page 30, and cases cited therein.

Defendant asserts that the officers in this case had received no information about defendant. Although this may be true, Officer Pilkauskas had received information from a previously reliable informant that heroin was being stored and dispensed by Swanson and Holloway from 4555 Ditman Street. The informant was present inside the premises on two occasions during the previous six days and observed Swanson and Holloway sell bundles of heroin to other persons. On February 9, 1972, the informant saw at least 10 to 15 bundles of heroin in the living room of the house. Mrs. Lewis was present at a location from which sales of narcotics had taken place.

When Officer Pilkauskas saw the bulge above Lewis' left breast after she had asked to leave, he asked her what she had in the top of her blouse. She said, "Nothing, it's me." The officer was sure that the bulge was not connected with defendant's body or with her apparel. In fact, he "fully realized that more than likely she had narcotics in her possession." The officer's observations of defendant's anxiety and of a bulge which he believed to be narcotics, when coupled with his information that narcotics were stored and dis-

pensed on these premises, were sufficient to establish probable cause for the arrest of defendant for possession of narcotics.

It is noted that defendant did not have to be a participant in the sale of the narcotics to be guilty of a crime. The crime is merely possession. It was possible that any person on the premises might have purchased heroin from Swanson before the officers arrived and might, therefore, possess it at the time of the search. This would have been consistent with the report of the informer that sales transactions did take place on the premises.

The cases cited by defendant, Commonwealth v. Santiago, 220 Pa. Superior Ct. 111 (1971); Commonwealth v. Goslee, 427 Pa. 403 (1967), and Commonwealth v. Clarke, 219 Pa. Superior Ct. 340 (1971), involve circumstances giving rise to significantly less suspicion than the instant case. In Santiago, defendant had no convictions for drug offenses, was seen on the street with unidentified packets, and fled. In Goslee, defendant was merely in the vicinity of a burglary within two days of the offense and had a prior conviction for burglary. In Clarke, all the officer saw was a defendant with a bulge in his rear pocket leave a phone booth and "hurriedly" walk away after the patrol car came into view. None of these cases had prior eyewitness reports from a reliable informant.

An informant's report, supported by other facts, was held by the United States Supreme Court to constitute probable cause to arrest without a warrant in Hill v. California, 401 U. S. 797 (1971); Chambers v. Maroney, 399 U. S. 42 (1970), rehearing denied 400 U. S. 856 (1970); McCray v. Illinois, 386 U. S. 300 (1967), rehearing denied, 386 U. S. 1042 (1967); Ker v. California, 374 U. S. 23 (1963), and Draper v. United States, 358 U. S. 307 (1959).

The eyewitness report in the instant situation, combined with the other factors heretofore enumerated, gave the officers probable cause to believe that the bulge was heroin, and, therefore, gave them probable cause to arrest for possession of narcotic drugs and to conduct a search incident to that arrest.

C. *Proper Search Because of Exigent Circumstances*

Defense counsel points out on page 2 of his brief that "where the exigencies of the situation require, the police may make an immediate warrantless search." See Carroll v. United States, 267 U. S. 132 (1925).

The factors of this situation, described above, were strong enough to constitute probable cause to obtain a search warrant for defendant, even if they were not strong enough to justify an arrest. Since the delay involved in obtaining a warrant would certainly have given defendant the opportunity to leave and destroy the evidence, the police were permitted to make the warrantless search because of the emergency circumstances.

Emergency circumstances were cited to permit a warrantless search in United States ex rel. McNeil v. Rundel, 325 F. Supp. 672 (E. D. Pa., 1971), where Judge Masterson approved the search of a car while a robbery suspect was still at large when the car had once been removed from police custody. See also United States ex rel. Cardaio v. Casscles, 446 F. 2d 632 (2d Cir., 1971).

## CONCLUSION

Under the factual situation of this case, it was reasonable for the police officers to conclude that the bulge over defendant's breast was probably caused by a concealed bundle of heroin.

Although the appellate cases often become muddy in distinguishing between "probable cause" to make

an arrest, "probable cause" to obtain a search warrant, and areas "rationally comprehended" within a search warrant, the facts of the instant circumstance meet any of these three tests.

Accordingly, the motion to suppress the evidence is denied.