SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**State v. Shawn M. Fenimore (A-18-24) (089786)**

**Argued March 4, 2025 -- Decided July 30, 2025**

**WAINER APTER, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the warrantless search of a car was consistent with the State Constitution when the car was parked in a State Police barracks parking lot; police had arrested the driver, removed the passenger, and obtained the keys; and the car was subject to imminent, mandatory impoundment.

In response to a request for a statement regarding a harassment claim against him, defendant Shawn M. Fenimore arrived at the Woodstown State Police barracks shortly before 8:30 p.m. on June 2, 2021. New Jersey State Police Trooper Daniel Radetich interviewed defendant and administered three sobriety tests. Defendant failed two of them, and Radetich arrested defendant for driving while intoxicated (DWI) at approximately 8:57 p.m. Radetich secured defendant to a holding cell bench and advised him that troopers would search his car. Radetich and four troopers found Nicholas Luzzo asleep in the passenger seat. One trooper escorted Luzzo into the police station. Troopers commenced a warrantless search of the car at 9:02 p.m. and found drugs, a loaded gun, and other evidence such as bolt cutters.

Defendant was charged with possession offenses and moved to suppress the evidence discovered during the warrantless search of the car. At the motion hearing, Radetich testified to the sequence of events described above. During cross-examination, Radetich agreed that under John's Law, troopers were required to impound defendant's car after his arrest for DWI, "[s]o, this car wasn't going anywhere . . . for at least twelve hours." When asked why he did not secure a warrant, Radetich stated that "that's our . . . standard process. When you're arrested for John's Law, we have the right to a probable cause search of their vehicle . . . ."

The trial court denied the motion. Defendant pled guilty and appealed. The Appellate Division affirmed. The Court granted certification. 258 N.J. 555 (2024).

**HELD:** Under the circumstances presented here, the automobile exception to the warrant requirement did not apply and the police were required to obtain a warrant before searching the car.

1

1.  The automobile exception to the warrant requirement under the New Jersey Constitution is significantly more protective of motorists' privacy interests than its federal counterpart.  The Court has identified several rationales that support New Jersey's automobile exception, including (1) the risk of the loss or destruction of evidence; (2) the unacceptable risk of serious bodily injury and death to officers, drivers, and passengers from prolonged encounters on the shoulder of a crowded highway; (3) the risk that motorists may feel compelled to consent to warrantless searches of their vehicles, which may be made on less than probable cause; (4) the recognition that, in certain circumstances, the privacy intrusion occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant; and (5) the undue burden and impracticability of requiring police to post a special police detail to guard the immobilized automobile while pursuing a warrant.  (pp. 10-14)

2.  Under "John's Law," when a person has been arrested for DWI, law enforcement "shall impound the vehicle that the person was operating at the time of arrest" "for a period of 12 hours after the time of arrest."  N.J.S.A. 39:4-50.23.  (pp. 14-15)

3.  In State v. Witt, the Court explicitly "part[ed] from federal jurisprudence that allows a police officer to conduct a warrantless search at headquarters merely because he could have done so on the side of the road."  223 N.J. 409, 448 (2015).  It expressly noted that "[w]hatever inherent exigency justifies a warrantless search at the scene . . . certainly cannot justify the failure to secure a warrant after towing and impounding the car at headquarters when it is practicable to do so."  Id. at 448-49.  And it specifically concluded that, going forward, New Jersey's "automobile exception" would be limited "to on-scene warrantless searches."  Id. at 449.  Here, there was no "on-scene search":  the car was searched in a police barracks parking lot, not on the scene of a motor vehicle stop or any other incident.  And the facts make clear there was no other "inherent exigency" to "justif[y] a warrantless search . . . under the automobile exception."  Id. at 448-49.  Further, none of the rationales the Court has identified to support New Jersey's more limited automobile exception apply to the factual setting of this case.  Therefore, the warrant requirement established by the State Constitution remained.  (pp. 15-20)

4.  The Court explains that it does not reach other arguments raised.  (pp. 20-21)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE WAINER APTER's opinion.**

2

# SUPREME COURT OF NEW JERSEY
## A-18 September Term 2024
### 089786

State of New Jersey,

Plaintiff-Respondent,

v.

Shawn M. Fenimore,
a/k/a Shawn Fenimore, and
Shawn Michael Fenimore,

Defendant-Appellant.

---

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 4, 2025 | July 30, 2025 |

---

Tamar Y. Lerer, Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Tamar Y. Lerer, of counsel and on the briefs).

Sarah D. Brigham, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sarah D. Brigham, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Lowenstein Sandler, and American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom, Parimal Garg, Jeanne LoCicero, and Ezra D. Rosenberg, on the brief).

1

Robert A. Mintz argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (McCarter & English, attorneys; Robert A. Mintz, Daniel P. D'Alessandro, and Leroy E. Foster, of counsel and on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

In this appeal, we consider whether law enforcement's warrantless search of a car was consistent with our State Constitution when the car was parked in a State Police barracks parking lot; police had arrested the driver, removed the passenger, and obtained the keys; and the car was subject to imminent, mandatory impoundment. We hold that under those circumstances, the automobile exception to the warrant requirement did not apply and the police were required to obtain a warrant before searching the car. We therefore reverse the judgment of the Appellate Division.

I.

We derive the following facts from New Jersey State Police Trooper Daniel Radetich's testimony at the hearing on defendant's motion to suppress, audio of body-worn camera footage played at the hearing, and the police report Radetich filed.

On the evening of June 2, 2021, Radetich began investigating a harassment complaint against defendant Shawn M. Fenimore. The

2

complainant alleged, among other things, that defendant had once hit someone with his car while driving under the influence of drugs. Radetich asked defendant to give a statement at the Woodstown State Police barracks. Radetich offered to pick defendant up and drive him to the station. Defendant said he would drive himself. After the call, Radetich told colleagues that he thought defendant was "possibly" intoxicated because his "voice was raspy and he was slurring his words on the phone."

Defendant arrived at the Woodstown barracks shortly before 8:30 p.m. Radetich watched from the windows of the lobby as defendant parked in the parking lot, exited the driver's door, stumbled, and fell or almost fell into the station wall.

Radetich interviewed defendant about the harassment complaint. Radetich testified that during the interview, he observed several signs that indicated defendant was intoxicated: defendant had a "fresh" "track mark" on his arm, suggesting a recent needle injection; his voice was "slow" and "raspy"; he "slouched in his chair"; his pupils were "pinpoint"; and he had "white stuff" on the side of his lips, indicating dry mouth that accompanies narcotic use. Radetich asked defendant if he had consumed any substances; defendant responded that he was "just tired." Suspecting otherwise, Radetich administered three sobriety tests. Defendant failed two of the three. Radetich

3

arrested defendant for driving while intoxicated (DWI) at approximately 8:57 p.m.

Radetich secured defendant to a holding cell bench and required defendant to remove his shoes. He then advised defendant that troopers would search the car defendant had driven to the station for intoxicants. Radetich testified that defendant became "hysterical" and started "screaming."

With a body-worn camera recording the process, Radetich and four other State Police troopers approached the car. They found Nicholas Luzzo asleep in the passenger seat. In the police report, Radetich noted that Luzzo was "difficult to awaken"; he "needed help getting out of the front passenger seat"; his speech was "raspy, slow, and slurred"; and his pupils were "pinpoint." One trooper escorted Luzzo into the lobby of the police station. Another held the keys to the car.

Troopers commenced a warrantless search of the car at 9:02 p.m. They immediately found a hypodermic needle and four wax folds of heroin in the center console. On the rear passenger seat, they found a plastic bag. Inside the bag, wrapped in a towel, was a gun loaded with a large-capacity magazine. The transcript of the body-worn camera footage played at the hearing reflects Radetich stating: "There's a gun in here. I knew it." Troopers also found two

bolt cutters, a hammer, four sets of car keys for other cars, several iPhones, and an iPod.

Immediately after the search, a State Police dispatcher contacted vehicle towing companies. Troopers also placed Luzzo under arrest.

Defendant was ultimately charged with second-degree unlawful possession of a weapon, third-degree possession of a controlled dangerous substance (CDS), and fourth-degree possession of a prohibited device. Defendant, joined by Luzzo, moved to suppress the evidence discovered during the warrantless search of the car.

At the motion hearing, Radetich testified to the sequence of events described above. During cross-examination, Radetich agreed that under John's Law, N.J.S.A. 39:4-50.23, troopers were required to impound defendant's car after his arrest for DWI, "[s]o, this car wasn't going anywhere . . . for at least twelve hours." Defense counsel asked Radetich why he then did not "just get a warrant" to search the car. Radetich responded as follows:

> [Radetich]: Because that's our . . . standard process. When you're arrested for John's Law, we have the right to a probable cause search of their vehicle and we search their vehicle for intoxicants.
>
> [Defense counsel]: Okay. That's when you're on the side of the road, isn't it?

[Radetich]: No, it could happen in a Walmart parking lot. It could happen anywhere. The location does not change that.

[Defense counsel]: What about the police barracks, does that change it?

[Radetich]: No, it does not change that.

. . .

[Defense counsel]: Okay. So, you're saying every time you arrest someone for a [DWI offense], you search their car?

[Radetich]: Yes, for intoxicants.

The trial court denied the motion to suppress. The court acknowledged that the vehicle was "in a parking lot of the State Police barracks" and was about to be "impounded pursuant to John's Law." The court noted that "may well cancel out an argument that it would be impracticable to obtain a search warrant" because "[c]ertainly, twelve hours would be long enough." However, the court determined that "under present case law, if there is probable cause that a person has operated a motor vehicle under the influence, police have the right to search that vehicle without a search warrant, whether it's on the roadway or in a parking lot." The State Troopers were therefore "justified in searching the vehicle without a search warrant."

After pleading guilty, defendant appealed his conviction and challenged the order denying his motion to suppress. He argued, among other points, that

6

"[t]he automobile exception does not allow for warrantless searches of vehicles that are located at the police station and whose drivers are already detained."

The Appellate Division affirmed. Although the appellate court acknowledged that this Court's opinion in State v. Witt, 223 N.J. 409 (2015), set forth the applicable standard, and that Witt "made several references to roadside stops," it rejected "defendant's argument [that] the search was illegal because his vehicle was in a police parking lot and awaiting impoundment."

The Appellate Division recognized that Witt prohibits "an officer from conducting 'a warrantless search at headquarters merely because he could have done so on the side of the road.'" (quoting Witt, 223 N.J. at 448). But it interpreted Witt's reference to police "headquarters" to mean "a police impound lot, rather than the parking lot of a police station," because "when a vehicle is towed and impounded, it is no longer mobile and the inherent exigencies supporting an on-scene search dissipate." Here, the Appellate Division determined, "the exigencies inherent to on-scene searches, such as the mobility of the vehicle and destruction of evidence, were present" because: (1) defendant's car was "in an unsecured parking lot prior to impoundment"; (2) "police did not have custody and control of defendant's vehicle prior to the search"; (3) "defendant's vehicle was mobile"; and (4) "although defendant

7

was detained, [Luzzo] was not." The court therefore concluded that the warrantless search "fell squarely within the parameters articulated in Witt."

We granted defendant's petition for certification. 258 N.J. 555 (2024). We also granted leave to appear as amici curiae to the American Civil Liberties Union of New Jersey (ACLU) and the Association of Criminal Defense Lawyers of New Jersey (ACDL).

## II.

Defendant argues, among other things, that under the plain language of Witt, the automobile exception applies only if "[t]he car has been subject to a 'stop' on the 'roadside.'" (quoting Witt, 223 N.J. at 441, 450). In this case, defendant contends, there was neither a "stop" nor a "road"; instead, defendant "was at a location specifically exempted from the automobile exception in Witt: police headquarters." The Appellate Division's holding that Witt's use of the word "headquarters" actually meant a police "impound lot," defendant urges, was erroneous. (quoting Witt, 223 N.J. at 448-49). In defendant's view, "[t]here is no justification for a warrantless search" of a car "in the police station parking lot" because "[a] police station is a place where officers can ensure that they and any civilians are safe and that the car is secured before undertaking any search."

The ACDL and ACLU agree with defendant. According to the ACDL, "[d]elaying the search to obtain a warrant" would have "posed no risk of physical harm to the troopers or [defendant] and no meaningful possibility of losing evidence," and it "would not have infringed on [defendant's] liberty interests because he had already been arrested." Allowing police to search without a warrant even when, like here, procuring a warrant "would not threaten [police] safety, jeopardize an investigation, or prolong a stop," the ACDL maintains, "diminishes the [state] constitutional right to be free from unreasonable searches." The ACLU asks this Court to hold that "Witt's automobile exception applies only when police have stopped a car on the roadside."

The State urges us to affirm the Appellate Division's decision. "Rather than limiting the automobile exception solely to roadside searches," the State contends, "Witt specifically recognized and held that the automobile exception may apply to parked cars" as long as "the circumstances giving rise to probable cause are unforeseeable and spontaneous." In the State's view, "Witt's use of the word 'headquarters' was a reference to a police impound lot," not "a station's public parking lot." Here, the "exigencies inherent to on-scene searches," the State contends, applied to the car defendant "chose to drive . . . while intoxicated and impaired[] to a police station" because: (1) the

9

vehicle "would have to be constantly protected from third-party access, as others could tamper with or destroy evidence within the car or remove it altogether"; and (2) defendant's car "had an unsecured passenger and had yet to be towed and impounded."

## III.

### A.

When reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotation omitted).

However, we owe "no deference" to the trial court's determinations on matters of law. State v. Mann, 203 N.J. 328, 337 (2010). We also review the trial court's application of the law to the facts de novo. State v. Harris, 181 N.J. 391, 416 (2004).

### B.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." They also prohibit

the issuance of warrants without "probable cause." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.

"Warrantless searches" are "presumptively unreasonable under both constitutions." State v. Cohen, 254 N.J. 308, 319 (2023). "[T]o overcome that presumption . . . the State must show by a preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement." State v. Smart, 253 N.J. 156, 165 (2023).

One such exception is the automobile exception. Under federal law, "officers may search an automobile without having obtained a warrant so long as they have probable cause" to believe it contains contraband or evidence of a crime. Collins v. Virginia, 584 U.S. 586, 592 (2018). The federal exception is based on two primary rationales: (1) "[t]he 'ready mobility' of vehicles," and (2) a reduced expectation of privacy in vehicles "capable of traveling on the public highways" given their "pervasive regulation." Id. at 591 (quoting California v. Carney, 471 U.S. 386, 390, 392 (1985)).

The United States Supreme Court has repeatedly declined to impose additional restrictions on the scope of the federal automobile exception. For example, in Chambers v. Maroney, the Court refused to limit the automobile exception to on-scene searches, finding no Fourth Amendment violation when police stopped a car and arrested its occupants, drove the car to the police

11

station, and then, without a warrant, thoroughly searched the car at the station. 399 U.S. 42, 44-45, 47-52 (1970).  And in Pennsylvania v. Labron, the Court rejected a rule that would have limited warrantless searches to situations in which probable cause arose in "unforeseen circumstances."  518 U.S. 938, 940 (1996).  The Court instead reiterated that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."  Ibid.

The automobile exception to the warrant requirement under the New Jersey Constitution is significantly more protective of motorists' privacy interests than its federal counterpart.  First, we have imposed an "extra requirement that the circumstances giving rise to probable cause be 'unforeseeable and spontaneous.'"  Smart, 253 N.J. at 171.  We have explained that under our State Constitution, the requirement of unforeseeability and spontaneity "is a reasonable accommodation of the competing interests between the individual's right to be free from unreasonable searches and law enforcement's investigatory demands."  Witt, 223 N.J. at 448.

Second, we "part from federal jurisprudence that allows a police officer to conduct a warrantless search at headquarters merely because he could have done so on the side of the road."  Ibid. (citing Chambers, 399 U.S. at 52).  In Witt, we explained that "'[w]hatever inherent exigency justifies a warrantless

12

search at the scene under the automobile exception certainly cannot justify the failure to secure a warrant after towing and impounding the car' at headquarters when it is practicable to do so." Id. at 448-49 (quoting State v. Pena-Flores, 198 N.J. 6, 39 n.1 (2009) (Albin, J., dissenting)).  Because "[w]arrantless searches should not be based on fake exigencies," we held that under our State Constitution, the automobile exception is limited "to on-scene warrantless searches."  Id. at 449.

As we made clear in Witt, we have not found, unlike the United States Supreme Court, that "the inherent mobility of [a] vehicle" and "the lesser expectation of privacy in an automobile compared to a home" are sufficient, on their own, to dispense with the warrant requirement.  Id. at 422-24, 447-49.

Instead, we have identified several additional rationales that support New Jersey's more limited automobile exception.  These include:  (1) the risk of the loss or destruction of evidence, see State v. Alston, 88 N.J. 211, 234 (1981) (in the time it takes for police to obtain a warrant, third persons could "move or damage [the car] or remove or destroy evidence contained in it"); (2) the "unacceptable risk of serious bodily injury and death" to officers, drivers, and passengers from "[p]rolonged encounters on the shoulder of a crowded highway," Witt, 223 N.J. at 441-42; (3) the risk that motorists may feel "compelled to consent" to warrantless searches of their vehicles, which

13

"may be made on less than probable cause," either to "avoid the dangers of protracted roadway stops" or "in the hope of escaping with only a warning" rather than a "traffic summons," id. at 442-44 (internal quotation omitted); (4) the recognition that, in certain circumstances, the privacy intrusion "occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant," id. at 423; and (5) the undue burden and impracticability of requiring police to post "a special police detail to guard the immobilized automobile" while pursuing a warrant, State v. Colvin, 123 N.J. 428, 435 (1991) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 462 (1971)).

## C.

Under "John's Law," when a person has been arrested for a DWI offense, law enforcement "shall impound the vehicle that the person was operating at the time of arrest." N.J.S.A. 39:4-50.23(a). A vehicle impounded pursuant to John's Law "shall be impounded for a period of 12 hours after the time of arrest or until such later time as the arrestee claiming the vehicle" meets certain statutory requirements for release. Id. at (b), (d). Under the law, an impounded vehicle "may be released to a person other than the arrestee

prior to the end of the impoundment period only" in specific, narrow circumstances.  Id. at (c), (d).

"John's Law makes no mention of searches" and thus neither expressly authorizes nor expressly precludes "a probable cause search of an impounded vehicle" without a warrant.  State v. Courtney, 478 N.J. Super. 81, 97 (App. Div. 2024).  In addition, when the "owner or permissive user is present," inventory searches of lawfully impounded vehicles are not permitted unless the owner or permissive user has been "given the option of either consenting to the inventory or making his own arrangements for the safekeeping of the property contained in the vehicle."  State v. Mangold, 82 N.J. 575, 587 (1980).

## IV.

## A.

We hold that in this case, when the car was parked in a State Police barracks parking lot; police had arrested the driver, removed the passenger, and obtained the keys; and the car was subject to imminent, mandatory impoundment, the automobile exception to the warrant requirement did not apply.  The police were therefore required to obtain a warrant before searching the vehicle.

That conclusion flows directly from the language and reasoning of Witt.  Witt explicitly "part[ed] from federal jurisprudence that allows a police officer

15

to conduct a warrantless search at headquarters merely because he could have done so on the side of the road." 223 N.J. at 448 (citing <u>Chambers</u>, 399 U.S. at 52). It expressly noted that "[w]hatever inherent exigency justifies a warrantless search at the scene under the automobile exception certainly cannot justify the failure to secure a warrant after towing and impounding the car at headquarters when it is practicable to do so." <u>Id.</u> at 448-49 (internal quotation omitted). And it specifically concluded that, going forward, New Jersey's "automobile exception" would be limited "to on-scene warrantless searches." <u>Id.</u> at 449.

The Appellate Division interpreted that language to mean that police must get a warrant to search if they tow a car to an impound lot but not if they search a car in a police station parking lot. But <u>Witt</u> does not say that. Instead, <u>Witt</u> uses the term "headquarters," which could clearly encompass a State Police barracks parking lot. And the federal case that <u>Witt</u> was parting ways from did not involve a warrantless search at an impound lot; <u>Chambers</u> reviewed a warrantless search "at the [police] station." 399 U.S. at 44.

As to <u>Witt</u>'s reasoning, the Appellate Division concluded that the "inherent exigencies supporting an on-scene search" continue to apply until "a vehicle is towed and impounded." It supported that conclusion by referring to the facts of this case, explaining that "the exigencies inherent to on-scene

16

searches, such as the mobility of the vehicle and destruction of evidence, were present" here because: (1) defendant's car was "in an unsecured parking lot prior to impoundment"; (2) "police did not have custody and control of defendant's vehicle prior to the search"; (3) "defendant's vehicle was mobile"; and (4) "although defendant was detained, [Luzzo] was not."

We disagree. As an initial matter, there was no "on-scene search" here: the car was searched in a police barracks parking lot, not on the scene of a motor vehicle stop or any other incident. And the facts make clear there was no other "inherent exigency" to "justif[y] a warrantless search . . . under the automobile exception." Witt, 223 N.J. at 448-49. Police were therefore required to obtain a warrant.

We address each of the appellate court's rationales in turn. Although it is true that defendant's car was "in an unsecured parking lot prior to impoundment," Radetich testified that the car was subject to mandatory impoundment under John's Law, and therefore "wasn't going anywhere" for at least twelve hours. Moreover, before the search began, defendant had been arrested for DWI and secured, barefoot, to a holding cell bench. The car was in the police barracks parking lot. Police had the keys. Luzzo, although not detained, had been escorted by a State Trooper into the police barracks.

17

Therefore, police actually did have "custody and control of defendant's vehicle prior to the search," and the vehicle was not "mobile."

Even beyond the Appellate Division's reasoning, none of the rationales we have previously identified to support New Jersey's more limited automobile exception apply to the factual setting of this case. There was no risk of the loss or destruction of evidence, because there was no risk that defendant or Luzzo could "move or damage [the car] or remove or destroy evidence contained in it" while defendant was detained and Luzzo was inside the police barracks. Alston, 88 N.J. at 234; see also Witt, 223 N.J. at 445 ("If an automobile's occupants are secured or detained so that they cannot destroy evidence or gain access to a weapon, the exigency to search the vehicle is illusory and, by all rights, a warrant should be secured."). There was no risk that third parties could move the car or remove or destroy evidence held within it either. Police had the car keys. And the car was parked at a State Police barracks, visible to troopers through the windows in the lobby (recall that Radetich, while inside the lobby, watched defendant park the car in the parking lot, get out of the driver's seat, and stumble).

The fact that the car was parked in a police barracks parking lot, visible to officers inside the lobby, also defeats any possible burden or impracticability in "a special police detail to guard the immobilized

18

automobile," Colvin, 123 N.J. at 435 (quoting Coolidge, 403 U.S. at 462). Indeed, after placing defendant under arrest at 8:57 p.m., Radetich was able to summon four other troopers to participate in a warrantless search of the car by 9:02 p.m. Instead of searching the car without a warrant, one of those five troopers could have guarded the vehicle to ensure evidence could not be moved or destroyed while a warrant was secured.

There was no "risk of serious bodily injury and death" to officers, defendant, or Luzzo from an "encounter[] on the shoulder of a crowded highway," Witt, 223 N.J. at 441-42, because there was no such encounter. There was also no risk that defendant would feel "compelled to consent" to a warrantless search of the car either to avoid "the dangers of protracted roadway stops," or "in the hope of escaping with only a warning" rather than a "traffic summons." Id. at 442-43. At least from a road safety perspective, it is difficult to imagine many places safer than a State Police barracks parking lot, and defendant had already been arrested for DWI.

Similarly, Witt's statement that the privacy intrusion "occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant," id. at 423, cannot justify the failure to obtain a warrant in this case. First, defendant had already been arrested and secured to a holding cell bench.

19

Second, Radetich conceded that the car was subject to mandatory impoundment and "wasn't going anywhere" for at least twelve hours. The trial court acknowledged that twelve hours was "[c]ertainly" enough time to obtain a warrant. There is simply no evidence that securing a warrant would have delayed either defendant's or the vehicle's detention.

The only rationale that remains is the reduced expectation of privacy based on "the pervasive regulation of vehicles capable of traveling on the public highways." Collins, 584 U.S. at 591 (quoting Carney, 471 U.S. at 392). We have never held this rationale sufficient, on its own, to justify the warrantless search of a car. We decline to do so now.

In short, neither the language and reasoning of Witt, nor the rationales we have previously used to explain our State's limited automobile exception, justify the failure to obtain a warrant in this case. Therefore, the warrant requirement established by our State Constitution remained.

B.

Because we agree with defendant that the "automobile exception does not apply to a car that is parked in a police station parking lot whose driver has been arrested and which the police have already determined will be impounded," we do not reach defendant's alternative arguments that (1) there was no probable cause to search the vehicle because evidence that a defendant

20

drove while intoxicated does not create probable cause to search the vehicle for evidence of intoxicants; or (2) even if there was probable cause to search the vehicle, "the circumstances that gave rise to it were not spontaneous and unforeseeable" because troopers first interviewed defendant and subjected him to field sobriety tests, and the car was not searched until thirty minutes after he arrived at the station intoxicated.

We also do not reach the State's alternative search-incident-to-arrest argument, which essentially asks us to reconsider our decision in State v. Eckel, 185 N.J. 523 (2006), in light of the U.S. Supreme Court's decision in Arizona v. Gant, 556 U.S. 332 (2009). The State raised that point for the first time on appeal, and the Appellate Division declined to address it.

V.

We reverse the judgment of the Appellate Division. We remand to the trial court for entry of an order granting defendant's motion to suppress and any further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE WAINER APTER's opinion.

21